146 P.3d 649

**STATE of Idaho, Plaintiff–Respondent,**

v.

**John DOE, Defendant–Appellant.**

**No. 32240.**

Supreme Court of Idaho, Moscow, August 2006 Term.

Sept. 29, 2006.

Tevis W. Hull, Sandpoint, argued for appellant.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondent. Jason B. Siems, Deputy Attorney General, argued.

BURDICK, Justice.

John Doe appeals from a district court order affirming the magistrate's order terminating the parent-child relationship between him and his daughters. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 1990, Doe met and married S.R. At that time Doe had two sons from a previous relationship, and S.R. had a daughter, A.R., from her previous marriage. After Doe and S.R. married, A.R.'s biological father, T.O., voluntarily terminated his parental rights to A.R., and Doe adopted the young girl. T.O., however, maintained contact with A.R. Doe and S.R. also had a daughter together, C.R., born shortly before Doe adopted A.R.

Doe, S.R., A.R., and C.R. lived together as a family until S.R. died under suspicious circumstances on February 10 or 11, 2002. Doe was charged with homicide for S.R.'s death, although the charges were later dismissed. While investigating S.R.'s death, law enforcement officials uncovered evidence that Doe had sexually molested his adopted daughter, A.R. It was also alleged that Doe had groped his wife's then eleven year-old sister shortly after he and S.R. married and while the sister was staying with them. Subsequently, Doe was charged with two counts of lewd and lascivious conduct with a minor under sixteen for his conduct with A.R. and S.R.'s sister. However, at a preliminary hearing Doe pleaded guilty to lewd and lascivious conduct with A.R. in exchange for the state dismissing the second charge. At that hearing the magistrate advised Doe of his rights, the exact nature of the charges against him and the maximum penalty he could face. Doe then entered a guilty plea and signed an acknowledgement and waiver of rights. Nevertheless, Doe moved to change his guilty plea, but the district court denied this motion and later sentenced Doe to ten years to life in prison.

During this time, A.R. and C.R. were in the state's custody. Eventually, A.R. was placed with T.O. and his family in Oregon, and C.R. went to live with her maternal great-aunt, C.L., and her family in Utah. After Doe's incarceration the state filed a petition for termination. Following a two-day trial in which the magistrate heard the testimony of several witnesses and took judicial notice of many documents and the criminal proceedings regarding Doe's sexual abuse of A.R., the magistrate issued an order terminating Doe's parental rights to both A.R. and C.R. Doe appealed this order to district court, which affirmed the magistrate's termination order. It is from this decision that Doe timely appeals the order terminating his parental rights as to C.R. only.

## II. ANALYSIS

Doe raises two separate issues in his appeal. First, he argues that the magistrate's

decision to terminate his parental rights to C.R. was based on an incorrect view of the evidence. Second, he asks that this Court disregard certain statements in the record. We turn first to Doe's evidentiary arguments because the decision whether to exclude evidence affects our analysis of the magistrate's termination order.

## A. Evidentiary Issues

■ As a preliminary matter, Doe requests that this Court disregard any hearsay statements made by A.R., CeCe, Ann Smith and C.W. (A.R.'s friend who also alleges that Doe sexually abused her). However, Doe fails to explain which specific statements should be excluded from the Court's consideration and also fails to explain the basis on which these statements should be excluded. It is well settled that this Court will not consider any issue when a party fails to support it with argument or authority. *Lamprecht v. Jordan, LLC*, 139 Idaho 182, 187, 75 P.3d 743, 748 (2003). Moreover, at oral argument counsel for Doe waived these arguments. Therefore, this Court will not consider Doe's request to exclude any statements made by A.R., CeCe, Ann Smith or C.W.

## B. Did the magistrate err in terminating the parent-child relationship between Doe and C.R.?

The underlying action comes to this Court pursuant to a petition filed under Title 16, chapter 20 of the Idaho Code, which provides for the termination of parent-child relationships on either a voluntary or an involuntary basis. "Implicit in [the Termination of Parent and Child Relationship] act is the philosophy that wherever possible family life should be strengthened and preserved...." I.C. § 16–2001. Additionally, the explicit purpose of this act is to promote the welfare of both parents and children. *Id.*

■ In Idaho the state may petition the court for termination of the parent-child relationship when it is in the parent's and child's best interest. I.C. § 16–2005(e) (2002).[1]

However, "[a] parent's right to custody, care and control of his or her child is a fundamental liberty right protected by the Fourteenth Amendment[,]" *In re Bush*, 113 Idaho 873, 875, 749 P.2d 492, 494 (1988), which includes the right to maintain a familial relationship with the child, *In re Baby Doe*, 130 Idaho 47, 50, 936 P.2d 690, 693 (Ct.App.1997). Therefore, when the State intervenes to terminate the parent-child relationship the requisites of due process must be met. *Baby Doe*, 130 Idaho at 50, 936 P.2d at 693. This necessitates the State proving the grounds for terminating a parent-child relationship by clear and convincing evidence, *Bush*, 113 Idaho at 876, 749 P.2d at 495, and also requires this Court on appeal to determine if the magistrate's decision was supported by substantial and competent evidence, *Doe I v. Doe*, 138 Idaho 893, 900, 71 P.3d 1040, 1047 (2003). Substantial, competent evidence is "such evidence as a reasonable mind might accept as adequate to support a conclusion." *Folks v. Moscow School Dist. No. 281*, 129 Idaho 833, 836, 933 P.2d 642, 645 (1997).

■ "Where ... the issues before the appellate court are the same as those considered by the district court sitting in an appellate capacity, the appellate court will review the trial record with due regard for, but independently from the district court's decision." *Doe v. Roe*, 133 Idaho 805, 807–08, 992 P.2d 1205, 1207–08 (1999) (quoting *Doe v. State, Dep't of Health & Welfare*, 122 Idaho 644, 645, 837 P.2d 319, 320 (Ct.App.1992)). We conduct an independent review of the record that was before the magistrate court, *Roe Family Servs. v. Doe*, 139 Idaho 930, 934, 88 P.3d 749, 753 (2004), in order to determine whether the magistrate's decision was supported by "objectively supportable grounds." *State v. Roe*, 142 Idaho 594, 599, 130 P.3d 1132, 1137 (2006).

Here, the state argued that Doe's parental rights to C.R. should be terminated based on I.C. § 16–2005(a), (b), (e), and (h)(3) (2002). CASA argued that I.C. § 16–2005(d) was also applicable. However, the magistrate deter-

---

1. Idaho Code § 16–2005 has since been amended. The pertinent language is currently found in I.C. § 16–2005(3) and it no longer provides that

the petition for termination must be filed by a parent, authorized agency or interested party. 2005 Idaho Sess. Laws ch. 391, § 49, p. 1298.

mined that only I.C. § 16–2005(e) provided the basis for termination of Doe's parental rights to C.R. Subsection (e) governs the assortment of indeterminate parent-child issues and is distinct from the explicit categories that precede it. *Hofmeister v. Bauer*, 110 Idaho 960, 962, 719 P.2d 1220, 1222 (Ct. App.1986). "[Idaho Code 16–2005(e)] stands alone in mandating that the parent's best interests be served by termination. The other categories, predicated upon particular conduct or status of the parent, do not impose this requirement. The categories are independent." *Id.* Therefore, we will examine whether termination was in the best interest of the child, C.R., before turning to whether it was in the best interest of the father, Doe.

*1. C.R.'s Best Interest*

▮ After determining that other subsections of I.C. § 16–2005 could not provide the basis for termination, the magistrate determined termination would be in C.R.'s best interest under I.C. § 16–2005(e). He wrote:

> [T]he benefits of termination to [C.R.] are many. Among those benefits are public financial benefits (money) that [C.R.] would be entitled to receive upon her anticipated adoption by [C.L. and her husband]. Mike Starnes [C.R.'s case worker] testified that there are public funding benefits through Health and Welfare that are only available to children who've been legally adopted. Since [Doe] will be in prison for at least the next nine and one half years, he will be unable to provide any significant financial support for [C.R.] if his parental rights are left intact. The Court also finds that [C.R.] would benefit from a sense of finality and comparative normalcy and permanency following termination and adoption by [C.L. and her husband]. [C.R.] would then have her "parents" with her in her home rather than having to think of her father as being in prison in another state. While the chances of it occurring

seem very remote, [Doe's] pending appeal leaves open the possibility that he could be released and have standing to request contact with [C.R.] if his parental status were still intact. As discussed, [Doe] is a child molester dwelling in denial and refusing treatment for his personal issues. As such, he represents an unacceptable risk to children, including [C.R.]. The fact that he hasn't yet molested [C.R.] is almost certainly the result of her comparative age to [A.R.], and not any indication of [Doe's] ability to control his deviant sexual impulses. The Court having considered the benefits and detriments inherent in terminating [Doe's] parental rights, it is the Court's finding by clear and convincing evidence that termination is in [C.R.'s] best interest.

Doe contends the magistrate erred in the decision that termination was in C.R.'s best interest because the trial court: (1) failed to "acknowledge that there had been no issue of abuse, poor parenting or abandonment" of C.R.; (2) failed to recognize that the State perpetrated abuse on C.R. by making decisions regarding her welfare without considering her need to have a continued relationship with Doe; and (3) failed to consider that the Department of Health and Welfare (the Department) had done nothing to foster a continued relationship between Doe and his daughter.

However, each of these arguments lacks merit; the magistrate considered each issue Doe raises and substantial and competent evidence supports his decision. First, Doe fails to recognize that the trial court considered issues of abuse, poor parenting and abandonment and carefully considered whether termination would be in C.R.'s best interest.[2] Additionally, the magistrate's memorandum opinion notes that the evidence does not support the Department's contention that Doe willfully abandoned C.R. nor does it support that Doe neglected C.R.[3]

---

2. Doe also argues that termination is not in C.R.'s best interest because she has not expressed any anxiety that he would abuse her. This assertion is not credible. The fact that a child may not be concerned about the possibility of abuse in no way lessens the possibility that abuse may occur or reduces the grave consequences.

3. This is in contrast to the magistrate's findings regarding A.R., where the magistrate found:

> [Doe] molested [A.R.'s] vagina with his hands and mouth for his own selfish, deviant, sexual gratification. The sexual molestation of a child is indisputably a form of physical and emotional cruelty that cannot be justified.

388

Likewise, the magistrate determined Doe had not abused C.R., not because of lack of desire to molest, but simply because of her young age compared to A.R.

Moreover, after carefully considering all of the evidence presented, the magistrate noted that C.R. and Doe shared a genuinely loving relationship and that C.R. missed her father. Before looking at the benefits termination would provide C.R., the trial court concluded the only benefit she would receive from a continued relationship with her father would be a "sense of satisfaction" from having the court "abide by her expressed desire that termination not occur." That "sense of satisfaction," the magistrate determined, was outweighed by the many benefits termination would provide to C.R. Therefore, the magistrate's opinion in this instance shows that he did the exact opposite of what Doe contends—the magistrate carefully considered the issues of abuse, neglect, abandonment and whether termination would be in C.R.'s best interest. As such, Doe is simply asking this Court to weigh the evidence differently than the trial judge. This the Court will not do. *See Hofmeister v. Bauer,* 110 Idaho 960, 964, 719 P.2d 1220, 1224 (Ct.App.1986).

Second, the magistrate considered the issue of the lack of contact between Doe and C.R. while she was in the State's custody. The magistrate's opinion notes that Doe was not allowed to have contact with his daughter first because of a no contact order entered in his lewd and lascivious conduct case and then because the Department of Corrections forbade him from contacting C.R. Moreover, the magistrate found that the Department "for good reason" prevented Doe from having contact with C.R. Once again, Doe mischaracterizes the magistrate's determination in an attempt to have this Court reweigh the evidence. Therefore, we hold that the magistrate did not err in his determination that termination would be in the best interest of C.R.

### 2. Doe's Best Interest

We turn next to the magistrate's analysis regarding whether termination was in Doe's best interest. After concluding termination would be in C.R.'s best interest, the magistrate determined termination would also be in Doe's best interest. He wrote:

In the case at bar, [Doe] is an unrepentant, untreated child molester in denial. [Doe] testified on cross examination that his own handwritten statement in his criminal Presentence Report ... admits that he 'hurt' [A.R.] and did not trust himself to be alone with her.... It is not in [Doe's] best interest to be alone or in contact with children. His untreated impulse to do, say or write something sexually inappropriate would likely subject him to additional criminal prosecution and/or institutional punishment such as solitary confinement. If [Doe's] rights to [C.R.] remain intact, so will his financial obligation of support. As he currently has no significant income, he would likely be facing a large child support arrearage judgment upon his eventual release. [Doe's] unrealistic hope to soon regain his freedom and "reunite" with [C.R.] as a family is currently providing him with some degree of motivation to refuse available psycho-sexual treatment. The termination of [Doe's] parental rights to [C.R.] would benefit him by reducing his stress and bringing finality and closure to the lingering legal issues surrounding [C.R.'s] presently uncertain status as a member of [C.L.'s family]. Such closure and finality will also benefit [Doe] by helping to push him beyond his denial and delusions surrounding his current and future circumstances. In short, termination will be a much-needed reality injection for [Doe].

The Court having considered and weighed the foregoing factors against [Doe's] stated and sincere desire to retain legal paternity of [C.R.], the Court finds by clear and convincing evidence that termination is in [Doe's] best interest.

Doe argues the magistrate erred in determining termination would be in Doe's best interest. First, he contends that because no

Such conduct also demonstrates an extreme form of "neglect", in that [Doe's] actions prove he has no concern whatsoever for [A.R.'s]

physical and emotional "health, morals or well-being" when his perverted sexual desires need to be sated.

independent investigation was done into the "allegations" of his abuse of A.R. by the Department the magistrate's analysis supports a "phantom prosecution." Second, Doe also argues the magistrate incorrectly presumed that any individual convicted of sexual abuse of a child would abuse again.[4]

Once again, Doe's arguments amount to nothing more than his asking this Court to reweigh the evidence. Although Doe contends that the Department should have conducted an independent investigation, he provides this Court with no authority for that contention. Moreover, even if this contention were true, there were more than mere "allegations" that Doe had sexually abused A.R. Doe pleaded guilty to lewd and lascivious conduct with his adopted daughter. The claim that the termination here supports a "phantom prosecution" lacks any basis in the record. Doe was prosecuted for his actions, and his complaints that his guilty plea was not entered knowingly, voluntarily and intelligently have already been addressed in his criminal case.[5] In addition, Doe claims that the magistrate "presumed" that an individual convicted of sexual abuse with a child would sexually abuse children in the future. However, Judge Julian did not 'presume' anything. Instead, he found it was likely that Doe would molest C.R., given the opportunity, because he was living in denial about his molestation of A.R. and because of his continued refusal of psycho-sexual therapy. The basis for those findings is supported by substantial and competent evidence.

We move now to Doe's contention that the trial court incorrectly presumed an individual convicted of sexual abuse would abuse another child if given the chance. The magistrate was rightly concerned that Doe would sexually molest C.R., and these concerns were supported by substantial and competent evidence. Doe's argument in this instance is supported with declarations of how much he and his daughter love each other. However, the magistrate was completely within his discretionary powers to determine that other factors outweighed the genuine affection between this parent and child. In the past, this Court has recognized that "parental affection is a priceless advantage. However, a child may not live on parental affection alone. In addition to love and affection and the satisfaction of his physical needs, a child requires moral guidance and training to allow [her] to grow into a well-adjusted, normal adult." *State ex. rel. Child v. Clouse*, 93 Idaho 893, 896, 477 P.2d 834, 837 (1970). The magistrate did not error by giving other factors more weight than the love between father and daughter and determining that it was in both Doe's and C.R.'s best interest to have their parent-child relationship terminated.

To the extent that we can assume Doe was arguing termination based on his best interest is not supported by the evidence, we will now address that concern. First, substantial and competent evidence supports the magistrate's determination that it would be in Doe's best "psychological" interest to have his parental rights terminated in order to bring Doe closure and help him push past his delusions and seek the help he needs in psycho-sexual treatment. The only evidence presented which contradicts the magistrate's findings and conclusions was Doe's own testimony. However, the magistrate found that

4. Doe also argues that if the magistrate's reasoning is adopted it would result in any criminal defendant facing a long period of incarceration having his parental rights terminated "per se." However, the magistrate considered numerous factors other than Doe's incarcerations and placed great emphasis on other factors. Moreover, to the extent that this argument is based on our decision in *Doe v. State*, 137 Idaho 758, 53 P.3d 341 (2002), Doe's reliance is misplaced. *Doe v. State* speaks only to instances where a court is examining whether an incarcerated parent neglected his child, not to instances of termination pursuant to I.C. § 16–2005(e).

5. Doe entered his guilty plea before Judge Julian, who found in this action that "[Doe] fully interacted with the [court] during this exchange, acknowledged his understanding of the charge against him and the consequences of pleading guilty, and proceeded to knowingly, voluntarily and intelligently waive his right to a Preliminary Hearing and plead guilty to committing the felony offence of Lewd and Lascivious conduct with the minor child, [A.R.]" Moreover, the District Court that ultimately sentenced Doe denied his motion to withdraw his guilty plea.

Doe's testimony wholly lacked credibility, that Doe was not an admirable or trustworthy person, but instead was manipulative and deceitful, and that Doe blamed his current problems on public institutions and the people around him. The magistrate also found that Doe lived "in his own little world of delusion and denial...." All of these determinations are supported by either the testimony of witnesses or attributable to the magistrate's own observations of Doe. As such, they are supported by substantial and competent evidence.

■■■■ Conversely, the magistrate's determination that it would be in Doe's best financial interest to have his parental rights terminated was error. It is our strong public policy that parents have a duty to support their children. Idaho recognizes that all parents have a duty to support and maintain their minor children. *Nielsen v. Nielsen,* 93 Idaho 419, 424, 462 P.2d 512, 517 (1969). This duty is not removed because of incarceration, *Nab v. Nab,* 114 Idaho 512, 519, 757 P.2d 1231, 1238 (Ct.App.1988),[6] nor can support obligations be removed by contract, *see Morrison v. Young,* 136 Idaho 316, 319–20, 32 P.3d 1116, 1119–20 (2001). Only by terminating parental rights is this duty removed. To consider the removal of this universal duty to support a benefit is not a proper consideration for the court; rather, courts must examine the benefits *specific* to that parent. As such, it was error for the magistrate to have considered the removal of the support duty as being in the parent's best interest.

■■■■ This is not to say that a court could not consider a parent's inability to provide support when examining the child's best interest, *within* certain limits. While a parent has the duty to financially support a child, the fact that a child might be in a better financial situation after adoption is not the

"end all" of the analysis. In this instance it is clear that C.R. would wholly lack any financial support from Doe during his incarceration while in contrast she would be well supported by her maternal great-aunt if termination occurred. As such, the magistrate did not err when he considered financial support for C.R. when examining whether termination was in her best interest.

While it was error to consider Doe's best financial interest, the magistrate's ultimate conclusion—that termination would be in Doe's best interest—remains valid and is supported by substantial and competent evidence. Moreover, the first basis, that termination would be in Doe's "psychological" best interests, alone would be sufficient to terminate Doe's parental rights under I.C. § 16–2005(e). Therefore, because the magistrate's determination that it would be in both C.R.'s and Doe's best interest if the parent-child relationship were terminated is supported by substantial and competent evidence, we affirm the order terminating Doe's parental rights to C.R.

## III. CONCLUSION

The order terminating Doe's parental rights is affirmed.

Chief Justice SCHROEDER and Justices TROUT, EISMANN and JONES concur.

---

6. While the duty to support is not removed because of incarceration *per se,* the amount of the support obligation may be modified during the period of incarceration. *Nab,* 114 Idaho at 520, 757 P.2d at 1239.