## IN THE COURT OF APPEALS OF THE STATE OF IDAHO

### Docket No. 39797

| | |
|---|---|
| IN THE MATTER OF THE TERMINATION OF THE PARENTAL RIGHTS OF JOHN (2012-01) DOE. | ) ) ) ) ) | 2012 Unpublished Opinion No. 526 |

IN THE MATTER OF THE ) 2012 Unpublished Opinion No. 526
TERMINATION OF THE PARENTAL )
RIGHTS OF JOHN (2012-01) DOE. ) Filed: June 21, 2012
-------------------------------------------------------------- )
IDAHO DEPARTMENT OF HEALTH & ) Stephen W. Kenyon, Clerk
WELFARE, )
) **THIS IS AN UNPUBLISHED**
    Petitioner-Respondent, ) **OPINION AND SHALL NOT**
) **BE CITED AS AUTHORITY**
v. )
)
JOHN (2012-01) DOE, )
)
    Respondent-Appellant. )
)

Appeal from the Magistrate Division of the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Cathleen MacGregor-Irby, Magistrate.

Order terminating parental rights, <u>affirmed</u>.

Alan E. Trimming, Ada County Public Defender; Joshua M. Wickard, Deputy Ada County Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Mary Jo Beig, Deputy Attorney General, Boise, for respondent.

_____

GRATTON, Chief Judge

John Doe appeals from the final judgment terminating his parental rights to his children.

### I.

### FACTUAL AND PROCEDURAL BACKGROUND

A child protection case was initiated on April 13, 2010, when Doe's children, Z.W. and A.W., were declared in imminent danger and removed from the custody of their parents pursuant to a petition under the Child Protective Act. Three days earlier, law enforcement officers responded to a store where A.W. and Z.W.'s mother was arrested for burglary while the children were with her. Doe had been involved in an altercation with the mother in March, and was incarcerated on charges of attempted strangulation at the time of her arrest. Further, a no contact

1

order had been put in place, restricting Doe to letter contact with his children through the Department until subsequent modification of the order or its expiration in July 2020. Thus, Doe was unavailable to care for the children. On May 6, 2010, Doe signed a stipulation to jurisdiction and agreed to have custody of the children vest with the Department. The mother also stipulated that both children were neglected and should be placed in the Department's custody. Based upon the stipulations, the magistrate found that Z.W. and A.W. came within the purview of the Child Protective Act and that legal custody of the children should be vested in the Department.

A case plan was developed and on June 1, 2010, the plan was approved by the magistrate. The various tasks of the plan included: (1) completion of Department-approved substance abuse, domestic violence, and mental health assessments and follow through with recommendations from those assessments; (2) completion of a Department-approved parenting curriculum and demonstration of skills learned during Doe's visits with his children; (3) maintaining a legitimate source of income that will enable Doe to provide for himself and his family; and (4) maintaining housing, free of all health and safety hazards, for himself and his family. The magistrate held a six-month review on October 5, 2010.

On March 30, 2011, the Department filed a petition to terminate father's parental rights to Z.W. and A.W. On April 12, 2011, the magistrate entered an order for permanency, approving termination of parental rights as the permanent plan. Also in April, Doe was released from prison, and placed on probation for ten years. The terms of his probation modified the previously entered no contact order, providing that Doe have no contact with any minor children "except as arranged under the supervision of the Idaho Department of Health and Welfare." Doe was therefore allowed to have supervised visits with Z.W. and A.W in the months that followed. A trial on the termination petition was scheduled for August 9, 2011, but that date was later vacated after the magistrate found the Department had not made reasonable efforts for reunification. On September 1, 2011, the magistrate entered a written order finding that the Department had made reasonable efforts to reunify the father with the children since July 27, 2011, and a new trial date was set. The father filed an answer to the petition on October 31, 2011. An amended petition to terminate was filed on November 8, 2011. Trial on the amended petition was held over the course of three days on November 16, 2011; December 14, 2011; and January 12, 2012.

2

On March 6, 2012, the magistrate issued a memorandum decision and order finding, by clear and convincing evidence, that both Doe and the mother had neglected Z.W. and A.W., that father was unable to discharge his parental responsibilities, and that it was in the children's best interests to terminate the parent-child relationship between both parents and Z.W. and A.W.[1]  A final judgment was entered the same day.  Doe timely appeals.

## II.

## DISCUSSION

A parent has a fundamental liberty interest in maintaining a relationship with his or her child.  *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002).  *See also Quilloin v. Walcott*, 434 U.S. 246, 255 (1978).  This interest is protected by the Fourteenth Amendment to the United States Constitution.  *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007).  "Implicit in [the Termination of Parent and Child Relationship Act] is the philosophy that wherever possible family life should be strengthened and preserved . . . ."  I.C. § 16-2001(2).  Therefore, the requisites of due process must be met when the Department intervenes to terminate the parent-child relationship.  *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006).  Due process requires that the Department prove grounds for terminating a parent-child relationship by clear and convincing evidence.  *Id*.

Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by "clear and convincing evidence."  *Santosky v. Kramer*, 455 U.S. 745, 746 (1982).  *See also* I.C. § 16-2009; *Doe*, 146 Idaho at 761-62, 203 P.3d at 691-92; *Doe*, 143 Idaho at 386, 146 P.3d at 652.  On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion.  *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009).  The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that

---

[1]     The magistrate also found that Doe was not the biological father of a third child, F.W., who was born to the mother of Z.W. and A.W. during the pendency of this action.  The magistrate ordered the termination of Doe's parental rights as to F.W.  Doe does not challenge the magistrate's findings or the termination of his parental rights as to F.W., and therefore we will not address the issue further.  *See Idaho Dep't of Health and Welfare v. Doe*, 152 Idaho 263, 267, 270 P.3d 1048, 1052 (2012).

parental rights be terminated. *Id.* The Idaho Supreme Court has also said, however, that the substantial evidence test requires a greater quantum of evidence in cases where the trial court finding must be supported by clear and convincing evidence, than in cases where a mere preponderance is required. *Doe v. Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *In re Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the magistrate's decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

Idaho Code Section 16-2005 permits the Department to petition the court for termination of the parent-child relationship when it is in the child's best interest and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period which will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

The magistrate found statutory grounds for termination of Doe's parental rights based on neglect, I.C. § 16-2005(1)(b), and the inability to discharge his parental responsibilities for a prolonged period that would be injurious to the health, morals, or well-being of the children, I.C. § 16-2005(1)(d). The magistrate also determined that it was in the best interests of the children that Doe's parental rights be terminated. *See* I.C. § 16-2005(1).

**A.  Neglect**

Doe argues that the magistrate's determination that Doe neglected his children was not supported by substantial and competent evidence. Specifically, he argues that the magistrate focused on Doe's past conduct and did not give sufficient credit to his progress on the case plan. The Department contends that the magistrate's finding of neglect was supported by substantial and competent evidence. Neglect of a child is one statutory ground upon which a court may order termination of the parent-child relationship. I.C. § 16-2005(1)(b). Neglect may take several forms, including conduct or omission by a parent which causes a child to be "without proper parental care and control, or subsistence, medical or other care or control necessary for his well-being." I.C. § 16-1602(25)(a); *see also* I.C. § 16-2002(3). Neglect may also exist where

4

a child "lacks the parental care necessary for his health, safety or well-being" due to the parent's inability "to discharge their responsibilities to and for the child . . . ." I.C. § 16-1602(25)(b).

Contrary to Doe's assertion, the magistrate fully considered all the evidence adduced at trial. The magistrate noted that Doe made progress in addressing his substance abuse, mental health, and domestic violence issues. While Doe was in custody, he completed cognitive self-change, anger management, and parenting classes. After his release, he continued to receive treatment in these areas. At the time of trial, Doe had completed a substance abuse assessment and was in treatment. Doe was also in treatment for his bi-polar disorder and other mental health conditions, and his treatment provider stated his prognosis was good provided Doe continued taking his medications as prescribed. He had also completed roughly half of a fifty-two-week batterer treatment program.

Despite Doe's recent successes, however, the evidence before the magistrate showed that Doe has struggled with these same issues for years. A parent's past circumstances and conduct may be considered when evaluating whether or not any current changes would be long lasting. *In re Doe 2009-19*, 150 Idaho 201, 208-09, 245 P.3d 953, 960-61 (2010). Doe began using alcohol at the age of fifteen and graduated to methamphetamine use at nineteen, and has been a consistent user of both alcohol and illegal substances for over twenty-five years. This trend of substance abuse most recently resulted in Doe pleading guilty to two counts of felony delivery of a controlled substance on November 15, 2011. Doe also has been struggling to deal with his mental health problems for close to thirty years, with little success. The expert testimony at trial established that people suffering from bi-polar disorder often go off their medications and, consistent with this observation, the uncontroverted evidence showed that Doe had been on and off his medications since he was first diagnosed in his early twenties. The magistrate expressly noted that "[t]here is no evidence before this court to establish a significant time period during which [Doe] was able to maintain his mental health by taking his medications, was maintaining sobriety, was not engaged in criminal behavior and was simultaneously providing either for himself and/or his wife and children."

In regard to Doe's domestic violence issues, the evidence at trial showed that Doe has a violent criminal history that spans nearly thirty years, dating back to 1985. His past arrests and convictions include: malicious injury to property; misdemeanor injury to child; disturbing the peace; disorderly conduct; fourth degree assault; interfering with making a report; harassment;

5

menacing; domestic abuse; and felony domestic abuse. The evidence showed a consistent pattern of criminal activity up until his incarceration in 2010 for felony domestic battery in the presence of a child, where he served a year in prison before being released on felony probation in April 2011. This most recent charge arose after Doe verbally threatened to kill and then attempted to strangle Z.W. and A.W.'s mother while A.W. was present. The counselor who performed Doe's domestic violence evaluation stated: "[Doe]'s profile suggests he is in the high risk range for domestic violence toward his intimate partners and also represents a risk for exposing his children to domestic violence. Due to the severity of his impairment from substance dependence and chronic history of legal involvement, he does not appear to be appropriate for community-based treatment which will require him to have a higher level of accountability and treatment readiness than he is currently manifesting."

Doe also failed to abide by the terms of his probation, which forbade him from having a relationship with a woman without the prior approval of his probation officer. Doe's probation officer testified at trial that she had seen various red flags during the first several months of Doe's probation that suggested he was having a relationship with a woman. Doe denied having such a relationship until October 2011, when he finally asked his probation officer for permission to have a relationship. The woman was the same one who the probation officer had suspected Doe was already involved with. During that conversation, Doe admitted to having a relationship with the woman, a relationship that he had kept a secret from the probation officer, as well as his case manager, domestic violence group, and the district judge. His probation officer testified that when she denied Doe's request, he became upset and frustrated, and proceeded to curse and scream at her. The probation officer testified that Doe's lying and the outburst caused her great concern, and that she did not think Doe was "getting it." She stated that Doe was simply "going through the motions," and although generally compliant with his probation, she did not believe Doe was demonstrating behavior that showed he was internalizing the information he was receiving in treatment, and then making the necessary changes to his behavior.

The evidence before the magistrate also showed that Doe had made very little progress in two important areas of his case plan: employment and housing. As the magistrate noted, over the past several years Doe has been unable to provide an income for himself due to either incarceration or simply a lack of personal wherewithal to go out and find stable employment.

6

Consistent with this observation, Doe was unemployed from April 2011, when he was released until October 2011, collecting food stamps and disability. Although Doe eventually secured a job six or seven months after his release, he provided no evidence establishing that the job provided an income sufficient to maintain himself or his children. The only evidence of his employment provided to the Department caseworker was one paycheck from October 2011. The Department caseworker also testified that in December 2011, Doe had reported working only twenty hours the entire month.

As to housing, the evidence showed that at the start of the termination trial, Doe had been out of prison for seven months and was still living in transitional housing. Although Doe had asked to move elsewhere, his probation officer denied his request because he was not in compliance with the terms of his probation, specifically that he was engaged in a relationship with a woman, as previously mentioned. By the last day of trial, on January 12, 2012, Doe had moved into his mother's trailer home because he could no longer receive funding for his transitional housing and was unable to pay for other accommodations on his own. The caseworker testified that the trailer home was a suitable place for visits with Z.W. and A.W., but was too small for reunification. There was no evidence presented that any type of lease or housing arrangement existed between Doe and his mother. Therefore, Doe's mother could conceivably ask him to leave at any time for any reason.

In summary, although Doe made some progress in addressing his substance abuse, mental health, and domestic violence issues since being released from prison, the evidence before the magistrate also showed that Doe had struggled with those same issues for years. Moreover, his efforts toward securing legitimate employment and stable housing for himself and his children after his release were seemingly unconcerned and lethargic. Indeed, by his own actions, Doe effectively prevented himself from being able to improve his housing situation and complete the tasks laid out in his case plan. Given the evidence before the magistrate, we hold that the magistrate's finding that Doe had neglected his children is supported by substantial and competent evidence.

Doe also argues that the magistrate's alternate finding under I.C. § 16-2005(1)(d) that Doe was not in a position to discharge his parental responsibilities, and that the inability would continue for a prolonged, indeterminate period of time, was not supported by substantial and competent evidence. However, the statutory grounds for terminating parental rights listed in

7

subsections (a) through (e) of I.C. § 16-2005(1) are independent. *In re Doe*, ___ Idaho ___, ___ P.3d ___ (April 26, 2012) (citing *Roe v. Doe*, 142 Idaho 174, 179, 125 P.3d 530, 535 (2005)). Having affirmed the finding of neglect under I.C. § 16-2005(1)(b), we need not address the other grounds found by the magistrate court. *Roe*, 142 Idaho at 179, 125 P.3d at 535.

**B.     Best Interest of the Child**

Doe also contends that there was not substantial and competent evidence supporting the magistrate's decision that termination of Doe's parental rights was in the best interests of the children. The Department argues that there was substantial and competent evidence that termination was in the best interests of the children. In order to terminate Doe's parental rights, the trial court is required to find that termination is in the best interest of the child. *See* I.C. § 16-2005(1).

Although denominated in his brief as an argument against the magistrate's finding that termination was in the best interests of the children, Doe is, in reality, arguing that he should have been given more time to continue making progress on his case plan. Doe cites *Dep't of Health and Welfare v. Doe*, 150 Idaho 752, 250 P.3d 803 (Ct. App. 2011), in support of his position. In that case, the Court held that a magistrate's order to terminate was erroneous given the substantial progress the father had made toward completing his case plan and his earnest efforts to be reunited with his children. *Id.* at 758, 250 P.3d at 809. The Court noted that except for one relapse into alcohol use, he had complied with the terms of his probation, submitted to alcohol tests with successful results, attended treatment sessions regularly, and accepted responsibility for his addiction and the negative consequences that resulted from it. *Id.* He also had made all of his scheduled visits with his children, acknowledged his poor treatment of them in the past and apologized to them for his behavior, engaged his children in activities and helped with homework during the visitations, and petitioned for and was granted continuing visitation with the children even after he knew termination was being sought. *Id.* at 754-55, 758-59, 250 P.3d at 805-06, 809-10. The father's treatment providers and the children's guardian ad litem gave positive reviews of the father, his efforts toward rehabilitation, and attempt to build a better relationship with his children. *Id.* at 758-59, 250 P.3d at 809-10. Further, the father maintained full-time employment for close to eight months leading up to the termination, and had simply asked the magistrate for a few more months to finish paying some debts, reinstate his driver's license, and obtain adequate housing, which he already was in the process of doing. *Id.* at 754-

8

55, 760, 250 P.3d at 805-06, 811. Given the circumstances, we concluded the magistrate erred by failing to take into account the practicalities of the father's situation and denying the father's request. *Id.* at 762-63, 250 P.3d at 813-14.

In this case, by contrast, the magistrate found that Doe struggles to provide for himself on a regular basis, and would be hard-pressed to consistently provide for his children. Even after being released from prison, Doe failed to secure stable employment for any substantial length of time. As noted above, the evidence at trial showed that Doe had provided only one pay stub as evidence of employment since being released, and that Doe had worked a total of only twenty hours for the entire month of December 2011. His was similarly unsuccessful at securing adequate and stable housing. After his release from prison, Doe lived in a transitional living facility until he could no longer receive funding. He then moved into his mother's trailer home, which was unsuitable for reunification, because he could not afford other housing.

In further support of his decision, the magistrate cited the testimony of the children's guardian ad litem and counselor. The counselor testified that both Z.W. and A.W. have post-traumatic stress disorder and generalized anxiety disorder. She testified that the children need parents who are consistent with them in their parenting; parents that are supportive, loving, involved in their treatment and education, and are able to support them financially and emotionally. She testified that both Z.W. and A.W. have witnessed extreme violence between their parents and that they have significant mental issues that will need to be treated. The guardian ad litem, who the magistrate found to be both "credible and articulate," testified that prior to entering foster care, Z.W. was having trouble keeping up in school and had issues with attendance. The guardian ad litem testified that since Z.W. was placed in foster care, however, she has been excelling in school and has generally been more positive and outgoing. The guardian ad litem expressed concern about Doe's failure to successfully treat and address his domestic violence and anger issues. She also found worrisome Doe's lack of appropriate and stable housing and the risk that those unresolved issues pose to the children if reunified with him. Both the guardian ad litem and the Department case worker testified that termination was in the best interests of the children.

The magistrate noted that Doe presented evidence from a visitation supervisor with the Department, who testified that his visits with his children were going well, that the children have become more relaxed around him, seem to have fun, and that Doe is appropriate with them

during the visits. The magistrate also noted, however, that these visits are not necessarily an accurate predictor of how life will be for the children if reunification took place six months or a year later. Overall, the evidence at trial showed that the girls have significant mental issues that need to be treated, and that Doe has significant mental health, substance abuse, and domestic violence issues of his own, along with instability regarding finances and housing. We hold there is substantial and competent evidence to support the magistrate's finding that termination of parental rights was in the best interests of the children.

## III.

## CONCLUSION

There is substantial and competent evidence to support the magistrate's decision to terminate Doe's parental rights. The magistrate's order terminating Doe's parental rights is, therefore, affirmed.

Judge LANSING and Judge MELANSON **CONCUR.**