IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 47338

| | |
|---|---|
| In the Interest of: John Doe I, A Child Under Eighteen (18) Years of Age. | ) ) |
| STATE OF IDAHO, DEPARTMENT OF HEALTH AND WELFARE, | ) ) Filed: December 6, 2019 |
| | ) |
| Petitioner-Respondent, | ) Karel A. Lehrman, Clerk |
| | ) |
| v. | ) THIS IS AN UNPUBLISHED |
| | ) OPINION AND SHALL NOT |
| JOHN DOE (2019-24), | ) BE CITED AS AUTHORITY |
| | ) |
| Respondent-Appellant. | ) |
| | ) |

Appeal from the Magistrate Division of the District Court of the Fifth Judicial District, State of Idaho, Minidoka County. Hon. Rick L. Bollar, Magistrate.

Judgment terminating parental rights, affirmed.

Clayne S. Zollinger, Jr., Burley, for appellant.

Hon. Lawrence G. Wasden, Attorney General; James T. Baird, Deputy Attorney General, Twin Falls, for respondent.

---

BRAILSFORD, Judge

John Doe (Father) appeals from the magistrate court's order terminating Father's parental rights to John Doe I (Son). We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Son was born in May 2015. In May 2017, Son's Mother gave birth to another child, and both Mother and infant tested positive for methamphetamines. Son was also tested and received a positive result. Son was taken into the protective custody of the Department of Health and Welfare (Department). Since that time, Son has been in the care of Mother's grandmother.

When Son was born, Father was in the custody of the Idaho State Board of Correction performing a rider related to a sentence for a burglary conviction. Although released in early

July 2015, Father shortly thereafter committed another burglary and was reincarcerated in late July 2015 until October 29, 2018, when he was released on parole. At the time of the termination trial, Father had been incarcerated for all but approximately five months of Son's life.

Despite Father's incarceration and that he was not identified on Son's birth certificate, Father participated in the Department's June 2017 family group decision meeting to formulate a case plan. He agreed to the case plan, which the magistrate court adopted in July 2017. The case plan set forth several tasks for Father to perform including, among other things, that he would take a paternity test; explore any available opportunities while incarcerated to take substance abuse classes and parenting classes; and seek mental health treatment. The plan also set forth tasks related to Father's anticipated release from incarceration, including that he would submit to random drug testing and maintain stable housing. Further, the case plan anticipated that upon Father's release, the Department would meet with him to "assess for further needs and services" and add "any needed tasks" to the case plan.

In July 2018, the Department filed a petition to terminate Mother's and Father's parental rights. Originally, the magistrate court scheduled a termination trial for January 2019. However, because Father was to be released from incarceration in October 2018, the court rescheduled the trial for May 2019 to "allow [Father] an opportunity to complete the requirements of the case plan." Regardless, Father delayed contacting the Department for approximately a month after his release.

At the termination trial in May 2019, numerous witnesses testified, including Father. Father testified he was "pretty sure" he received a copy of the case plan. Further, he testified he had not completed the case plan and had never contacted the Department about his progress on the case plan. Father admitted that he had not received any mental health counseling and denied having any mental health issues needing treatment; he had not yet found stable housing for Son and lived in a halfway house that did not allow children; he had not completed his parenting classes yet; and he had not provided the Department with his drug test results but had missed one and failed two urinalysis tests since being released from incarceration. Further, Father testified that he had an "ongoing battle" with the Department about visitation with Son because Father did not want to travel from Twin Falls to Burley to visit Son but rather wanted the Department to transport Son to him. Father also admitted he had never provided any financial support for Son

2

or given Son a gift. Father acknowledged that it is in Son's best interests to be in "a stable home"; Son was at that time in a "good, stable home"; and Son did not know Father. As Father testified, "He still doesn't know who I am." According to the Department case worker, Father had visited with Son three times since Father's release from incarceration, but he had as many as thirty-two additional opportunities to visit Son if Father had requested visitation.

After the termination trial, the magistrate court terminated Father's parental rights. Among other things, the court found that Father had failed to comply with his case plan and that his failure was not a result of his incarceration but, rather, his own conduct:

> [Father] has not attempted to cultivate a parental relationship, bonding with [Son] in the time [Father] has had available since [Father's] release from custody. Those failures were not the product of impossibility resulting from his incarceration; rather, they reflected his decision to ignore the requirements of the case plan and elevate the priority of his own convenience. . . . [Father] is directly responsible for noncompliance with the requirements of the case plan by engaging in behaviors with no thought or consideration of the effect of that behavior on the case plan.

Further, the court found that Son had been in the Department's custody for more than twenty-two months and that termination of the Father's parental rights is in Son's best interests.[1] Father appeals.

## II.

## STANDARD OF REVIEW

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. Idaho Code § 16-2001(2). Therefore, the requisites of due process must be met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the grounds for terminating a parent-child relationship be proved by clear and convincing evidence. *Id*. Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by clear and

---

[1] During the termination trial, Mother voluntarily terminated her parental rights.

convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *see also* I.C. § 16-2009; *In re Doe*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652.

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id.* The Idaho Supreme Court has also said that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *Doe v. Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *In re Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the magistrate court's decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

### III.

### ANALYSIS

Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. I.C. § 16-2001(2). Idaho Code Section 16-2005 permits a party to petition the court for termination of the parent-child relationship when it is in the child's best interests and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period that will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

Idaho Code Section 16-2002(3)(a) defines "neglect" as any conduct included in I.C. § 16-1602(31). Section 16-1602(31)(a) provides, in pertinent part, that a child is neglected when the child is without proper parental care and control, or subsistence, medical or other care

4

or control necessary for his or her well-being because of the conduct or omission of his or her parents, guardian, or other custodian or their neglect or refusal to provide them. Neglect also exists where the parent has failed to comply with the court's orders or the case plan in a Child Protective Act case; the Department has had temporary or legal custody of the child for fifteen of the most recent twenty-two months; and reunification has not been accomplished by the last day of the fifteenth month in which the child has been in the temporary or legal custody of the Department. I.C. § 16-2002(3)(b).

The magistrate court ruled that Father neglected Son under I.C. § 16-2002(3)(b) by failing to comply with the case plan. Father does not dispute this ruling or any of the court's specific findings supporting it. Rather, he asserts "the Department's failures" violated his due process rights. Father's argument is twofold. First, he argues the Department "fail[ed] to promptly conduct a paternity test" thereby denying him "the opportunity to complete a case plan." Second, he argues the Department violated his due process rights by failing to amend the case plan once his paternity was established.

Father's arguments, however, are not supported by the record. Contrary to Father's assertion, the fact that the paternity test was not "prompt" did not adversely affect his opportunity to complete his case plan. As noted above, Father participated in the June 2017 meeting that gave rise to the case plan adopted by the court in July 2017. A specific task of the case plan was for Father to complete the paternity testing, which the court had already ordered. Per the case plan, Father submitted to a paternity test. This test confirmed his paternity in February 2018, and this confirmation was conveyed to the court in June 2018.

Although the court did not receive confirmation of Father's paternity until June 2018 (for reasons which are unclear from the record), this delay did not adversely impact his ability to perform his case plan. Importantly, at no time during the course of this case did Father, Mother, or the Department actually dispute Father's paternity. Rather, his paternity was assumed throughout the case's entirety. Indeed, the case plan specifically provided for his participation before his paternity was confirmed. To the extent Father was unable to perform certain tasks in the case plan between its adoption in July 2017 and June 2018 when the court received

5

confirmation of his paternity, that inability was a result of his incarceration--not of any challenge to his paternity.[2]

Likewise, the fact that the Department did not "amend" Father's case plan to add more specific tasks did not adversely impact his ability to perform the case plan.[3] The case plan clearly set forth the expectation that Father demonstrate the ability "to provide for the child's basic and emotional needs"; "to parent in a safe, drug free and caring manner"; and "to provide [Son] with a stable, safe, sanitary and drug free home." Further, the case plan clearly identified that Father needed to take parenting and substance abuse classes and to seek treatment for mental health issues. Finally, the case plan specifically provided tasks for him to perform upon his release from incarceration, i.e., to submit to random drug testing and to "obtain and maintain stable housing for at least 3 months." Contrary to Father's assertion, he was not "treated as merely an interested bystander" because he lacked "an official finding of paternity." Rather, the Department's inclusion of Father in the case plan demonstrates the Department's efforts to establish expectations and tasks for his reunification with Son in July 2017--almost a year before the court received confirmation of Father's paternity. Furthermore, as early as June 2017 the record indicates court-appointed counsel represented Father in this case, further contradicting his claim that he "could not fully participate in attempting to reunify with [Son]."

Moreover, Father's due process rights are protected by the requirement that clear and convincing evidence support the magistrate court's factual findings. As the United States Supreme Court has held, a standard of clear and convincing evidence "adequately conveys to the factfinder the level of subjective certainty about [the court's] factual conclusions necessary to satisfy due process." *Santosky*, 455 U.S. at 769.

---

[2] After Father's paternity was confirmed, the magistrate court notified him in a July 2018 order that he must register with the Bureau of Vital Statistics as Son's father to avoid "a prima facie case of abandonment" under Idaho Code § 16-2005. Father, however, did not register as Son's father. Regardless, the court did not conclude Father had abandoned Son.

[3] Father asserts that "once an individual is found to be a parent, then the Department amends the service plan to include specific tasks for the parent to perform to be reunited with their [sic] child." Father, however, cites no authority for the proposition that the Department must amend the case plan and, therefore, waives the argument. *See Powell v. Sellers*, 130 Idaho 122, 128, 937 P.2d 434, 440 (Ct. App. 1997) (ruling party waives issue on appeal if either authority or argument is lacking).

Father does not challenge the sufficiency of the evidence supporting the magistrate court's termination of his parental rights. Nevertheless, we conclude substantial and competent evidence, including Father's testimony, supports the magistrate court's findings of clear and convincing evidence that Father neglected Son by failing to perform the case plan; Son was in the Department's custody for more than twenty-two months; and termination of Father's parental rights is in the best interests of Son. *See* I.C. § 16-2002(3)(b). Accordingly, Father's due process rights were not violated.

## IV.

## CONCLUSION

Substantial and competent evidence supports the magistrate court's finding that Father neglected Son and that the termination of Father's parental rights is in Son's best interests. Accordingly, Father's due process rights were not violated, and we affirm the court's judgment terminating his parental rights.

Chief Judge GRATTON and Judge HUSKEY **CONCUR**.