**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 47897**

| | |
|---|---|
| In the Matter of: Jane Doe I and John Doe I, Children Under Eighteen (18) Years of Age. | ) ) ) ) |
| STATE OF IDAHO, DEPARTMENT OF HEALTH AND WELFARE, | ) ) **Filed: July 7, 2020** |
| Petitioner-Respondent, | ) ) **Melanie Gagnepain, Clerk** |
| v. | ) ) **THIS IS AN UNPUBLISHED** |
| JANE DOE (2020-15), | ) **OPINION AND SHALL NOT** ) **BE CITED AS AUTHORITY** |
| Respondent-Appellant. | ) ) |

Appeal from the Magistrate Division of the District Court of the Third Judicial District, State of Idaho, Canyon County. Hon. A. Lynne Krogh, Magistrate.

Judgment terminating parental rights, affirmed.

Bethany L. Harder, Caldwell, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kathryn T. Garrett, Deputy Attorney General, Boise, for respondent.

_____

BRAILSFORD, Judge

Jane Doe (Mother) appeals from the magistrate court's judgment terminating her parental rights. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

The subject of this appeal is the termination of Mother's parental rights to two of her minor children: a son born in 2009 and a daughter born in 2011.[1] In September 2017, while

_____

[1]     The termination of the father's parental rights to these two minor children is the subject of a separate appeal. Mother also has four other minor children, including an infant whose

1

Mother was living with the children in a women's and children's shelter in Boise, one of the children reported that Mother physically abused him with a belt and said she heard voices telling her to hurt him. Based on this allegation and Mother's history with child protection services, the police declared the children in imminent danger the next day.

On September 29, 2017, the Idaho Department of Health and Welfare (Department) filed a petition under the Child Protective Act (CPA), Idaho Code §§ 16-1601-1647, to obtain custody of the children. After an adjudicatory hearing, the magistrate court found that the children lacked a stable home environment; protective custody was in the children's best interests; and it had jurisdiction over the children under the CPA.

In December 2017, the magistrate court approved the Department's case plan for Mother. The case plan stated that Mother had placed the children at risk for years as a result of her unaddressed mental health needs. Among other things, the case plan required that Mother follow mental health treatment recommendations. In April 2019, the Department petitioned the court to terminate Mother's parental rights based on I.C. § 16-2005(1)(b) for neglecting the children under I.C. § 16-2002(3)(a) and for failing to comply with her case plan under I.C. § 16-2002(3)(b).

In February 2020, the magistrate court held a two-day termination hearing. Numerous witnesses testified at the hearing, including Mother's case worker and a clinical psychologist who had evaluated Mother. Following the hearing, the court issued written findings and conclusions. Among other things, the court found that the Department had custody of the children for twenty-eight months and that "the primary safety issue is [Mother's] mental health and the impact her mental health issues have on her parenting." The court noted Mother's history of mental health problems, including an intentional overdose and a mental health commitment as a result of her walking into heavy traffic.

Relying on Mother's psychological evaluation, the magistrate court found that Mother has schizophrenia based on her disorganized speech and thinking, her delusional beliefs, and reported auditory hallucinations; has symptoms of bipolar disorder; has major depressive disorder; and has post-traumatic stress disorder. Further, the evaluation concluded that these

paternity is not established and three older minor children who live primarily with their father. Mother's parental rights to these four other minor children are not at issue in this case.

mental health issues "impact [Mother's] ability to parent her children [and] place the children at risk for neglect and abuse"; Mother can parent her children safely "*only* if she can address the safety risks her mental health issues cause" (emphasis added); but "[i]t will be very difficult for [Mother] to address her mental health issues, given the many issues, the seriousness of those issues, her experiences when symptoms [occur], and her unwillingness to acknowledge the most serious of the issues." Indeed, during the termination hearing, Mother denied being schizophrenic.

The magistrate court further found that, as a result of her mental health issues, Mother's "engagement in the case plan cycled up and down several times." Despite the case plan's requirement that Mother follow the recommendations to treat her mental health issues, Mother generally resisted mental health counseling and other services. The court found Mother has a "history of taking medication, then stopping it when she becomes stable, and then becoming symptomatic again." During these periods when Mother's mental health destabilized, her ability to communicate decreased; she missed appointments; and she was discharged from services in which she was participating. At one point during the case plan's pendency, Mother went to California and did not return for several months, and Mother's visitations with the children while in the Department's custody never progressed beyond supervised visits because of the concerns about her mental state.

Based on these and other findings, the magistrate court concluded Mother had neglected the children under I.C. § 16-2005(1)(b). Alternatively, the court concluded Mother is unable to discharge her parental responsibilities under I.C. § 16-2005(1)(d).[2] Further, the court concluded termination of Mother's parental rights is in the children's best interests. Mother timely appeals the magistrate court's termination of her parental rights.

## II.

## STANDARD OF REVIEW

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States

---

[2] During the termination hearing, the magistrate court granted the State's motion to amend its petition to add Mother's inability to discharge her parental responsibilities under I.C. § 16-2005(1)(d) as a basis for terminating her parental rights.

3

Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. I.C. § 16-2001(2). Therefore, the requisites of due process must be met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the grounds for terminating a parent-child relationship be proved by clear and convincing evidence. *Id*. Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *see also* I.C. § 16-2009; *Doe v. Dep't of Health & Welfare*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652.

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id.* The Idaho Supreme Court has also said that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *State v. Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *Roe v. Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the magistrate court's decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

Idaho Code § 16-2005 permits a party to petition the trial court for termination of the parent-child relationship when it is in the child's best interests and any one of the following five conditions exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period that will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each of these conditions is an independent, alternative basis for terminating parental

4

rights.  *Doe*, 144 Idaho at 842, 172 P.3d at 1117; *see also* I.C. § 16-2005(1) (noting court may terminate parental rights if one or more of conditions exist).

## III.

## ANALYSIS

On appeal, Mother argues the magistrate court lacked clear and convincing evidence to find she is unable to discharge her parental responsibilities under I.C. § 16-2005(1)(b) for neglecting the children and under I.C. § 16-2005(1)(d) for being an unfit parent.[3]  In support, Mother suggests the court ignored her progress during the case's pendency and that, at the time of trial, Mother had a four-bedroom apartment, was taking an antipsychotic drug, was willing to begin taking an injectable antipsychotic drug, had gained a "stable income," and is "very resourceful" in meeting her needs through community resources like food stamps and Medicaid. Additionally, Mother notes the court "emphasized" that she "refuses or is unable to acknowledge her [s]chizophrenia diagnosis," but she asserts "with consistent medication [she] has the ability to parent her children."

These arguments focus primarily on Mother's stability at the time of the termination hearing and her willingness at that time to take medication for her mental health issues.  They do not challenge, however, the magistrate court's findings of Mother's significant past history of failing to take her medication and her resulting instability.  For example, the court found that Mother experienced periods of homelessness and that "stable housing has been an ongoing issue"; Mother "has a history of taking medication, then stopping it when she becomes stable, and then becoming symptomatic again"; "she refuses or is unable to acknowledge the disorder, and the impact it has on her children and her ability to provide and care for them"; "she has not complied with a treatment plan that would enable her to parent her children"; and "there is no reason to believe she could and would consistently do so in the future."

---

[3]  Mother suggests the analysis for challenging the termination of her parental rights under both I.C. §§ 16-2005(1)(b) and (1)(d) is essentially the same.  She relies on *Idaho Dep't of Health & Welfare v. Doe (2016-32)*, 161 Idaho 754, 761 n.4, 390 P.3d 1281, 1288 n.4 (2017), in which the Idaho Supreme Court concluded that the analysis under I.C. § 16-2005(1)(d) (parental unfitness) "substantially overlaps with neglect" under I.C. § 16-1602(31)(b) (parental unfitness). The magistrate court in this case did not identify upon which of the numerous definitions of "neglected" under I.C. § 16-1602(31) it relied to rule Mother had neglected the children.  For purposes of our analysis, we adopt Mother's assumption that the court relied upon I.C. § 16-1602(31)(b) (parental unfitness), which substantially overlaps with I.C. § 16-2005(1)(d) (parental unfitness).

When concluding whether to terminate parental rights, a magistrate court may consider past evidence. *See, e.g.*, *Doe v. Doe I (2017-15)*, 162 Idaho 653, 658-59, 402 P.3d 1106, 1111-12 (2017) ("[A] court may consider past character evidence in order to determine future behavior."). Substantial and competent evidence supports the court's findings in this case that Mother's future behavior will follow the same pattern as her past behavior. This evidence includes, among other things, the clinical psychologist's conclusion that Mother has the potential to safely parent her children "*only* if she can adequately address the concerns and safety risks" and that addressing those concerns "would likely . . . be difficult for her given the many clinical concerns . . . and how challenging those concerns are." (Emphasis added.) Mother's case worker's testimony also supports the court's conclusion that Mother's progress "cycled up and down" and that she generally resisted acknowledging her mental health issues and obtaining treatment for those issues.

Additionally, the magistrate court did not ignore Mother's progress during this case, as Mother suggests. Rather, the court concluded Mother's mental health issues thwarted her ability to make progress. For example, the court found that "it has been impossible for [Mother] to comply with the case plan due to mental issues." While Mother may have shown temporary progress at the time of the termination hearing, substantial and competent evidence supports the court's conclusion that Mother neglected her children under I.C. § 16-2005(1)(b).

## IV.

## CONCLUSION

Substantial and competent evidence supports the magistrate court's conclusion that Mother neglected and was unable to parent the children. Accordingly, we affirm the judgment terminating Mother's parental rights.

Judge GRATTON and Judge LORELLO **CONCUR**.