**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**
**Docket No. 47730**

| | | |
|---|---|---|
| In the Matter of: John Doe I, A Child Under Eighteen (18) Years of Age. | ) ) | |
| STATE OF IDAHO, DEPARTMENT OF HEALTH AND WELFARE, | ) ) ) | Filed: May 20, 2020 |
| Plaintiff-Respondent, | ) ) | Karel A. Lehrman, Clerk |
| v. | ) ) | THIS IS AN UNPUBLISHED |
| JANE DOE (2020-03), | ) ) | OPINION AND SHALL NOT BE CITED AS AUTHORITY |
| Defendant-Appellant. | ) ) ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Elmore County. Hon. Theodore Fleming, Magistrate.

Judgment terminating parental rights, <u>affirmed</u>.

Ratliff Law Offices, Chtd; Terry S. Ratliff, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; John R. Shackelford, Deputy Attorney General, Boise, for respondent.

---

HUSKEY, Chief Judge

Jane Doe appeals from the magistrate court's judgment terminating her parental rights. She asserts the magistrate court erred in finding it was in the best interests of the child to terminate her parental rights because she loves her child and has a strong bond with him. The magistrate court's judgment terminating Doe's parental rights is affirmed.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Doe is the biological mother of R.H.-C. On May 3, 2018, following a traffic stop in Elmore County, Doe was arrested on charges of possession of methamphetamine and burglary. At the time of her arrest, Doe's wife, R.H.-C., and Doe's eight-month-old half-brother were in the car. The car was so messy and dirty that Doe's half-brother was initially unnoticed. The

1

smell in the car of garbage and rotting food was overwhelming and likely caused by the piles of garbage and rotting food in the car and the trunk. Doe's half-brother is not involved in this appeal. R.H.-C. was dirty, did not appear to have been bathed in several days, and had a chemical burn on his left thigh potentially caused by sitting for a prolonged period in a urine-soaked diaper. He had finger marks on his left arm as if he had been grabbed by an adult. His clothing was dirty and urine-stained. His car seat was soaked with urine and covered in feces and rotting food. R.H.-C. was small for his age and exhibited delays in growth, weight, and language. Because Doe and her wife were arrested, R.H.-C. was declared in imminent danger. Doe stipulated to R.H.-C. remaining in the custody of the Department of Health and Welfare (Department) at the shelter care hearing.[1] Although Doe bonded out of jail on May 9, 2018, Doe did not appear at the adjudicatory hearing and for purposes of the adjudicatory hearing, a default was entered.

Doe was ordered to attend the case plan hearing set for June 20, 2018, but she failed to appear. The magistrate court accepted the case plan and ordered a review hearing set for September 19, 2018. The goal was reunification. The case plan required Doe to: (1) demonstrate that she developed the appropriate parenting skills and could meet the basic needs of the child, including financial, medical, dental, and developmental needs; (2) obtain sufficient financial means to support the child, including clothing, food, and medical care; (3) provide safe and appropriate housing; and (4) remain substance free, complete a substance abuse class, and complete random drug tests.

On September 13, 2018, a case plan status update was filed. Doe was aware of the requirements of the case plan and was in the process of scheduling a substance abuse screening. In terms of visitation, between May 3 and September 19, six visits had occurred between R.H.-C. and one or both of his parents, and eleven visits had been missed or cancelled. Doe did not appear at the September 19, 2018, status hearing.

A six-month review hearing was scheduled for October 31, 2018. By then, Doe had been rearrested on a probation violation for an unrelated charge and was in custody; thus, no additional in-person visits had taken place although the Department was looking into video visits between R.H.-C. and Doe. Doe had not completed the substance abuse evaluation requirement

---

[1]     Doe's wife's parental rights were also terminated. Her appeal is pending in Supreme Court Docket No. 47729.

in the case plan and had cancelled several appointments for the substance abuse screening. Doe remained in custody during the remainder of the Child Protective Act (CPA) case and the termination trial. During that time, she exercised video visits with R.H.-C.

On July 5, 2019, the Department filed a petition to terminate Doe's parental rights, alleging four counts of neglect pursuant to Idaho Code § 16-2002(3)(a). The petition alleged Doe failed to demonstrate appropriate parenting (Count I); had substance abuse and criminal thinking that impaired her ability to provide proper parental care and control of the child (Count II); was unable to discharge her parental responsibilities because she had been sentenced on or about June 26, 2018, for possession of a controlled substance and aiding and abetting burglary to unified term of five years, with two years determinate, and the court retained jurisdiction for one year (Count III); and failed to complete the court-ordered case plan with the child in the custody of the Department for the last fifteen months (Count IV). Doe filed an answer and denied all allegations. As of the July 2019 termination trial, Doe had been in custody for at least eleven months and was scheduled to be in custody until early 2020. As a result, the Department requested to change the permanency goal from reunification to termination of parental rights and adoption. The magistrate court granted the motion and set the termination hearing for November 2019.

An amended petition to terminate Doe's parental rights was filed, alleging the same counts of neglect, but amending Count IV to indicate Doe had been sentenced on June 26, 2019, to a unified term of five years, with two years determinate, and the court retained jurisdiction for 365 days, for possession of a controlled substance and aiding and abetting burglary.

During the termination hearing, although Doe testified that her child was "fine" when he was taken into custody and she had been able to provide for his needs, the magistrate court found that Doe admitted the child had not been well cared for prior to coming into the Department's custody. The magistrate court made numerous factual findings. For example, the magistrate court found that Doe was a methamphetamine addict who was using methamphetamine daily and only her incarceration prevented on-going use; Doe had no realistic plans to maintain sobriety if she were released on probation; as of January 3, 2020, Doe had been incarcerated for more than a year; and the concerns that initially brought the minor child into custody had not been alleviated; Doe had not provided any financial support for her child, had not demonstrated protective parenting abilities, had not provided a safe and stable home environment, or demonstrated the

3

ability to meet all of the child's needs. Despite Doe's love for her child, the magistrate court concluded Doe had been unable to put her child's needs above her own substance abuse and criminal behavior, demonstrating a lack of insight into her parenting capability and her inability to provide for the child's health, safety, and well-being. The magistrate court also found that the child had improved significantly in foster care and was thriving.

As a result, the magistrate court found there was clear and convincing evidence that Doe had neglected R.H.-C as alleged in the petition and that reunification had not occurred in the last fifteen months that R.H.-C had been in custody of the Department. The magistrate court then found that terminating Doe's parental rights was in the best interests of R.H.-C so that he could have a parent who could provide him with not only love, but support, stability, and a drug-free and criminal-free environment to grow up in. The magistrate court concluded that R.H.-C was well cared for and bonded with his foster parent, that termination of Doe's parental rights would provide him with the continued permanency, routine, and regularity with a stable parental figure that he had enjoyed and bonded with since coming into care. According to the magistrate court, the uncontroverted testimony established that terminating Doe's parental rights would allow R.H.-C. "to have the real opportunity to continue to grow and develop in a safe, stable home, free of criminality and drug use." The magistrate court entered a judgment terminating Doe's parental rights and Doe appealed.

## II.

## STANDARD OF REVIEW

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id.* The Idaho Supreme Court has also said that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *Doe v. Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *In re Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the magistrate

4

court's decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

Idaho Code § 16-2005 permits a party to petition the court for termination of the parent-child relationship when it is in the child's best interests and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period that will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

## III.

## ANALYSIS

Doe argues the magistrate court's decision to terminate her parental rights should be reversed because the court erred when it found that it was in R.H.-C.'s best interests to terminate Doe's parental rights. Doe does not challenge any of the magistrate court's factual findings, only whether those findings rise to the level of clear and convincing evidence.

**A.     The Magistrate Court Did Not Err When It Found Terminating Doe's Parental Rights Was in the Best Interests of R.H.-C.**

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. I.C. § 16-2001(2). Therefore, the requisites of due process must be met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the grounds for terminating a parent-child relationship be proved by clear and convincing evidence. *Id*. Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *see also* I.C. § 16-2009; *In re Doe*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652.

5

The magistrate court terminated Doe's parental rights on the ground of neglect. Idaho Code § 16-2002(3)(a) defines "neglect" as any conduct included in I.C. § 16-1602(31). Section 16-1602(31)(a) provides, in pertinent part, that a child is neglected when the child is without proper parental care and control, or subsistence, medical or other care or control necessary for his or her well-being because of the conduct or omission of his or her parents, guardian, or other custodian or their neglect or refusal to provide them. Neglect also exists where the parent has failed to comply with the court's orders or the case plan in a CPA case and the Department has had temporary or legal custody of the child for fifteen of the most recent twenty-two months and reunification has not been accomplished by the last day of the fifteenth month in which the child has been in the temporary or legal custody of the Department. I.C. § 16-2002(3)(b).

The Department filed a petition to terminate Doe's parental rights, alleging four counts of neglect for her failure to demonstrate appropriate parenting (Count I); her inability to provide proper parental care and control because of her substance abuse and criminal thinking (Count II); her inability to discharge her parental responsibilities because she had been sentenced on or about June 26, 2018, for possession of a controlled substance and aiding and abetting burglary to a unified term of five years, with two years determinate, and the court retained jurisdiction for one year (Count III); and her failure to complete the court-ordered case plan with the child in the custody of the Department for the last fifteen months (Count IV). The magistrate court found Doe neglected her child under all four counts. Although Doe does not challenge on appeal the findings that she neglected her child, even if she had, the magistrate court's findings are supported by substantial and competent evidence.

Doe testified that she was committing crimes with her child in tow and using methamphetamine around the child. Even after Doe was released on the charges, she continued to use controlled substances frequently until she ran out of money and was arrested again. Doe had been in custody for more than a year by the time the termination trial was held, although she was initially released on the charges that occurred on May 3, 2018. Thereafter, Doe continued to accumulate additional criminal charges: in 2019, she pled guilty to disturbing the peace and petit theft; in 2018, she pled guilty to petit theft (May 2018) and a no contact order violation (November 2018). Doe also was convicted of other crimes prior to her arrest on May 3, 2018.

6

At the time R.H.-C. was taken into custody, he was dirty, had rashes from lack of hygiene, and was developmentally delayed, physically and behaviorally. Despite this, Doe testified the child was "fine." Consequently, there was clear and convincing evidence to support the magistrate court's findings that Doe failed to demonstrate appropriate parenting and her substance abuse and criminal thinking impaired her ability to provide proper parental care and control.

Doe remained incarcerated for the majority of the CPA case because of her repeated criminal behavior. R.H.-C. had remained in the Department's care for half of his life by the time of the termination trial. Doe did not complete her case plan when she was not in custody. Although visitation occurred while Doe was in custody, that is not sufficient to negate the magistrate court's findings of neglect on the other grounds. Consequently, the magistrate court's holding that Doe neglected her minor child is supported by substantial and competent evidence.

## B. The Magistrate Court Did Not Err When It Found Termination Was In the Best Interests of R.H.-C.

Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the children to terminate the parent-child relationship. *In re Aragon*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991). When determining whether termination is in the children's best interests, the trial court may consider the parent's history with substance abuse, the stability and permanency of the home, the unemployment of the parent, the financial contribution of the parent to the children's care after the children are placed in protective custody, the improvement of the children while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law. *In re Doe*, 159 Idaho 192, 198, 358 P.3d 77, 83 (2015); *In re Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014). A finding that it is in the best interests of the children to terminate parental rights must still be made upon objective grounds. *In re Doe*, 152 Idaho 953, 956-57, 277 P.3d 400, 403-04 (Ct. App. 2012).

Doe argues the magistrate court's finding that termination was in the best interests of R.H.-C. was not supported by clear and convincing evidence because Doe had an ongoing relationship with R.H.-C. even while Doe was in custody. The magistrate court considered this factor and nonetheless, found that termination of Doe's parental rights was in the best interests of Doe's child. Doe's substance abuse and criminal thinking were so pervasive that R.H.-C. was found dirty, had a chemical burn on his thigh, had finger marks on his arm, was sitting in a car

7

seat soaked with urine and coated with rotting food and feces in a car filled with garbage and rotting food. The magistrate court found that Doe had no realistic plan for sobriety upon her release, for housing, or for providing a safe and stable residence for the child.

The magistrate court reasoned:

Although [Doe] has demonstrated some insight into her addiction and substance abuse disorder, and is receiving a substantial amount of treatment while incarcerated on her retained jurisdiction, her probation plan for avoiding relapse by simply staying away from people and situations that could possibly be a trigger for her cravings is not well developed. She does not know where she will yet stay, how she will support herself, or her child, and there does not appear to be anyone in her life at this time that she can rely upon to support her recovery.

As evidenced by the physical status of R.H.-C.--his delayed development for growth, weight, and language--Doe did not understand how to care for the child, nor had she demonstrated any insight into the child's needs throughout the pendency of the case.

The magistrate court found that the safety concerns that brought the child into care had not been sufficiently alleviated and Doe's case plan had not been completed. Doe had not provided any significant financial support for the child, demonstrated protective parenting abilities, provided a safe and stable home environment free of substance abuse and criminality, or exhibited the ability to meet all of R.H.-C.'s basic needs. Additionally, although Doe loved R.H.-C., she was unable to put his needs above her own criminality and significant drug use, which demonstrated a lack of insight into her parenting capability and her current (and prior) inability to meet the child's basic health, safety, and well-being needs.

The magistrate court also found that since R.H.-C. had been placed in foster care, he had bonded with his foster parent and thrived in her care. For example, R.H.-C. had entered care as apprehensive and had difficult behavioral issues. By the time of the termination hearing, he had become confident and felt safe and his demeanor had improved tremendously. Additionally, R.H.-C. had overcome all his developmental delays and there were no longer any health or developmental concerns. The magistrate court found the minor child had made great progress and was happy, loved, and thriving.

The magistrate court found that based on the length of time R.H.-C. had been in care, the significant progress he had made, his young age, and the importance of a permanent placement, it was in R.H.-C.'s best interests to terminate Doe's parental rights. The magistrate court also found that termination of Doe's parental rights would provide the minor child with the

8

permanency, routine, and regularity with a stable parental figure that he had enjoyed and bonded with since coming into care and that termination was appropriate so that R.H.-C. could continue to live and thrive with a sense of security, predictability, love, and attachment.

Here, the magistrate court considered Doe's testimony that she loved her child and had visitation with the child while in custody. Nonetheless, love does not always translate into the ability to discharge parental responsibilities. *Idaho Dep't of Health & Welfare v. Doe*, 149 Idaho 165, 171, 233 P.3d 96, 102 (2010). In this case, Doe's love for her child and the fact that she had visitation with the child does not override the court's finding that terminating Doe's parental rights was in R.H.-C.'s best interests. *See In re Doe*, 157 Idaho 694, 703, 339 P.3d 755, 764 (2014). As such, the magistrate court's determination that terminating Doe's parental rights is in the best interests of R.H.-C. is affirmed.

## IV.

## CONCLUSION

The magistrate court's findings that Doe neglected her child and its judgment terminating her parental rights is affirmed.

Judge GRATTON and Judge BRAILSFORD **CONCUR**.