# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 48255

| | |
|---|---|
| In the Interest of:  Jane Doe I and Jane Doe II, Children Under Eighteen (18) Years of Age. | ) ) ) |
| STATE OF IDAHO, DEPARTMENT OF HEALTH AND WELFARE, | ) ) |
| | ) |
| Petitioner-Respondent, | ) |
| | ) |
| v. | ) ) |
| JANE DOE, | ) |
| | ) |
| Respondent-Appellant. | ) ) |

Filed:  November 12, 2020

Melanie Gagnepain, Clerk

THIS IS AN UNPUBLISHED OPINION AND SHALL NOT BE CITED AS AUTHORITY

---

Appeal from the Magistrate Division of the District Court of the Fourth Judicial District, State of Idaho, Ada County.  Hon. Andrew Ellis, Magistrate.

Judgment terminating parental rights, <u>affirmed</u>.

Anthony Geddes, Ada County Public Defender; Karen L. Jennings, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; John R. Shackelford, Deputy Attorney General, Boise, for respondent.

---

HUSKEY, Chief Judge

Jane Doe appeals from the magistrate court's judgment terminating her parental rights, arguing the court erred in finding that she neglected the children and it is in the children's best interests to terminate her parental rights.  Because the record contains substantial and competent evidence to support the magistrate court's finding that Doe neglected her children and that terminating Doe's parental rights is in the best interests of the children, the magistrate court's judgment terminating Doe's parental rights is affirmed.

1

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

Doe is the mother of V.W. and R.W. In March 2019, R.W. suffered a broken elbow.[1] Doe was unable to explain the injury, and V.W. and R.W. were declared in imminent danger, removed from Doe's care, and placed into shelter care. After an adjudicatory hearing, the magistrate court found it had jurisdiction over the family and granted legal custody of the children to the Department of Health and Welfare (the Department). That same day, the magistrate court also approved a case plan for Doe.

In February 2020, Doe plead guilty to three counts of misdemeanor injury to child, stemming from the incident that led to R.W. being declared in imminent danger. Doe's sentence in the criminal case included a no-contact order (NCO) prohibiting Doe from having contact with V.W. and R.W. until February 2026, except as expressly approved by the Department for purposes of the Child Protection Act case. That same month, the magistrate court held a permanency hearing and approved the permanency goal of termination of Doe's parental rights to the children. In March 2020, the Department petitioned to terminate Doe's parental rights.

Following a trial, the magistrate court found by clear and convincing evidence that Doe had neglected her children, was unable to discharge her parental responsibilities, and that termination of Doe's parental rights is in the best interests of the children. Doe timely appeals.

# II.

## STANDARD OF REVIEW

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id.* The Idaho Supreme Court has also said that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *In re*

---

[1] Subsequent examination revealed healing skin injuries on R.W.'s face, scalp, and jaw, swollen hands, and bruising on R.W.'s torso, all of which are indicative of blunt force trauma. R.W. also had extensive hair loss around the back and base of the skull.

*Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *In re Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the magistrate court's decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

## III.

## ANALYSIS

Doe argues the magistrate court's decision to terminate her parental rights should be reversed. Doe claims the magistrate court erred when it found that Doe neglected her children. Doe also asserts that the magistrate court erred when it found it was in the children's best interests to terminate Doe's parental rights.

**A.     The Magistrate Court Did Not Err When It Found Doe Neglected Her Children**

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. I.C. § 16-2001(2). Therefore, the requisites of due process must be met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the grounds for terminating a parent-child relationship be proved by clear and convincing evidence. *Id.* Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *see also* I.C. § 16-2009; *In re Doe*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652.

Idaho Code § 16-2005 permits a party to petition the court for termination of the parent-child relationship when it is in the child's best interests and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period that will be injurious to the health, morals, or well-being of the child; or

3

(e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

The magistrate court terminated Doe's parental rights on two different bases: Doe's neglect of her children pursuant to I.C. § 16-2005(1)(b) and her inability to discharge parental responsibilities pursuant to I.C. § 16-2005(1)(d). Idaho Code § 16-2002(3)(a) defines "neglect" as any conduct included in I.C. § 16-1602(31). Section 16-1602(31)(a) provides, in pertinent part, that a child is neglected when the child is without proper parental care and control, or subsistence, medical or other care or control necessary for his or her well-being because of the conduct or omission of his or her parents, guardian, or other custodian or their neglect or refusal to provide them. Neglect also exists where the parent has failed to comply with the court's orders or the case plan in a Child Protective Act case and the Department has had temporary or legal custody of the child for fifteen of the most recent twenty-two months and reunification has not been accomplished by the last day of the fifteenth month in which the child has been in the temporary or legal custody of the Department. I.C. § 16-2002(3)(b). Idaho Code § 16-2005(1)(d) provides that a court may terminate parental rights when "[t]he parent is unable to discharge parental responsibilities and such inability will continue for a prolonged indeterminate period and will be injurious to the health, morals or well-being of the child."

The magistrate court found Doe neglected her children for two reasons. First, the magistrate court found that Doe's profound and inadequately treated mental health issues "impair her ability to provide proper parental care and control" over the children. Second, the magistrate court concluded that Doe could not provide proper parental care and control because Doe was unable to provide her children with a safe and stable home environment. This lack of safe and stable home environment stemmed from Doe's inability to protect the children from harm either by Doe or by other adults. The magistrate court also found that Doe was unable to discharge her parental responsibilities and that her inability would continue for an indefinite period of time because of the NCO issued in the criminal case.

On appeal, Doe challenges the magistrate court's conclusion that she neglected the children pursuant to I.C. § 16-2005(1)(b), but does not challenge the magistrate court's decision to terminate Doe's parental rights based on its finding that Doe was unable to discharge her parental responsibilities pursuant to I.C. § 16-2005(1)(d).

4

If the court grants a judgment on more than one independent basis and the appellant does not challenge each basis for termination, then we must affirm the judgment. *Idaho Dept. of Health and Welfare v. Doe*, 163 Idaho 707, 711, 418 P.3d 1216, 1220 (2016) ("When a judgment is granted on alternative grounds and one of them is not addressed on appeal, we must affirm the judgment."). Although Doe argues the magistrate court should not have considered the NCO, she does so by way of rhetorical question, not by supporting the claim with argument and authority. Moreover, it is unclear if Doe is arguing the magistrate court erred in considering the NCO when determining Doe was unable to discharge her parental duties for a prolonged period of time or when determining whether termination is in the best interests of the children. Failure to articulate a claim, and support a claim with argument and authority precludes this court's review of the claim. *State v. McDay*, 164 Idaho 526, 528, 432 P.3d 643, 645 (2018); *see also State v. Zichko*, 129 Idaho 259, 263, 923 P.2d 966, 970 (1996).

In this case, the magistrate court terminated Doe's parental rights on alternative grounds-- neglect pursuant to I.C. § 16-2005(1)(b) and her inability to discharge parental responsibilities pursuant to I.C. § 16-2005(1)(d). Because Doe only challenges the termination of her parental rights based on a finding of neglect, we must affirm the judgment on the unchallenged ground; that Doe was unable to discharge her parental responsibilities. Moreover, to the extent Doe challenges the alternate basis, she does not support her challenge with argument and authority; consequently, we affirm the termination on that ground.

Even if this Court was not required to affirm on the independent statutory ground of inability to discharge parental responsibilities, the magistrate court's finding that Doe neglected her children is supported by substantial and competent evidence.

First, there was substantial and competent evidence of Doe's inadequately treated mental health issues. In 2014, Doe was diagnosed with fetal alcohol syndrome, post-traumatic stress disorder, bipolar disorder, anxiety, depression, and schizophrenia. In 2019, following the children's removal into custody, Doe underwent a psychological evaluation with a clinical psychologist. The psychologist reaffirmed Doe's diagnoses of bipolar disorder, schizophrenia, anxiety, and post-traumatic stress disorder and included a diagnosis of panic disorder. Additionally, the psychologist made multiple recommendations for Doe, including extensive parenting education, individual counseling to treat Doe's anxiety and trauma symptoms, treatment to address her history of being a victim of domestic violence, remaining compliant

5

with her prescribed psychotropic medications, and completion of a protective parenting class and anger management course. The psychologist noted that compliance with the recommendations was necessary for Doe to "parent her children in an appropriate, healthy and safe manner and meet their needs in the future." Doe failed to comply with any of the recommendations. She briefly attended counseling, but was discharged for non-compliance. She failed to complete an anger management course and was non-responsive to efforts to enroll her in treatment to address her history of being the victim of domestic violence. Doe was not consistent in complying with her psychotropic medication and continued to suffer auditory hallucinations. This evidence supports the magistrate court's findings that Doe's profound and inadequately treated mental health concerns that led to the removal of the children continued to be both profound and inadequately treated during the pendency of the case.

Second, there was substantial and competent evidence that Doe failed to maintain safe and secure housing for the children. Doe claimed that R.W.'s injuries occurred while the children were in the care of other adults, which the magistrate court found highlighted Doe's inability to ensure that her children are protected from dangerous individuals or circumstances. At the time of Doe's psychological evaluation, she was living with the children's paternal grandmother and the grandmother's fiancé, a registered sex-offender. Doe minimized the severity of the grandmother's fiancé's underlying sex offense and discounted the Department's concerns of the risk the grandmother's fiancé posed to the children. Doe later moved from the paternal grandmother's residence into her own residence. A social worker from the Department observed multiple "random" adults frequenting Doe's residence, including homeless individuals who Doe allowed to reside with her. Doe requested multiple individuals be approved as roommates, some of whom were rejected because of disqualifying child protection referral histories. Despite their disqualifying histories, Doe disagreed that these individuals were unfit to be around her children. A Family Preservation Services (FPS) worker observed that Doe had an adult male roommate who moved in and out of the residence. The same FPS worker also observed homeless adults sleeping in Doe's living room on several occasions. Based on this evidence, the magistrate court found Doe's new residence to be unsafe. The evidence supports the magistrate court's conclusion that Doe failed to provide proper parental control and care by failing to maintain safe and secure housing for the children. In sum, the magistrate court's finding that Doe neglected her children is supported by substantial and competent evidence.

6

**B. The Magistrate Court Did Not Err When It Found Termination Was in the Best Interests of Doe's Children**

Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the children to terminate the parent-child relationship. *In re Aragon*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991). When determining whether termination is in the children's best interests, the trial court may consider the parent's history with substance abuse, the stability and permanency of the home, the unemployment of the parent, the financial contribution of the parent to the children's care after the children are placed in protective custody, the improvement of the children while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law. *In re Doe*, 159 Idaho 192, 198, 358 P.3d 77, 83 (2015); *In re Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014). A finding that it is in the best interests of the children to terminate parental rights must still be made upon objective grounds. *In re Doe*, 152 Idaho 953, 956-57, 277 P.3d 400, 403-04 (Ct. App. 2012).

Doe challenges the magistrate court's conclusion that termination of her parental rights is in the children's best interests. Substantial and competent evidence supports the magistrate court's conclusion. By the end of the termination trial, V.W. and R.W. had been in the Department's care for seventeen months. Prior to removal from Doe's care, both children were exposed to violence, sexual abuse, unsanitary home conditions, and continual exposure to various adults, some of whom likely inflicted serious injury to the children. After being placed in the Department's care, R.W. was placed in a foster home that was selected as the permanent adoptive placement. While in foster care, R.W.'s physical and emotional condition improved substantially. V.W. was initially placed in the same foster home but was removed due to behavioral issues. V.W. was subsequently placed in an out-of-state, long-term, residential treatment center to receive care for her special needs stemming from trauma she experienced while in Doe's care. At the time of the termination trial, V.W. was still receiving care at the treatment center with no identified discharge date.

Doe argues that because V.W. does not have an identified adoptive placement, allowing Doe to maintain her parental rights is in V.W.'s best interests. The magistrate court acknowledged that V.W. did not have an identified adoptive placement and that there was value in her maintaining a connection with a prospective adult caregiver outside of the treatment center. However, the magistrate court found that termination of Doe's parental rights was in

7

V.W.'s best interests, even if it meant losing that connection for the immediate future. The magistrate court was confident that the Department would recruit an adoptive placement for V.W. that would become her connection to a caregiver outside of the treatment center. The magistrate court found that Doe was not equipped to meet V.W.'s substantial behavioral needs long term. Allowing Doe to maintain the connection with V.W., only for it to be severed when V.W. is discharged from the treatment center, would be unnecessarily cruel to V.W. These findings are supported by substantial and competent evidence.

Doe also argues that her NCO should not be included in the court's reasoning regarding reunification with her children. The magistrate court found that the children required permanent home placements as quickly as possible in order to have any chance of success as healthy, productive adults. Because of this, the magistrate court concluded that allowing the children to wait in foster care for up to six years until the NCO expires was not an option. As noted above, Doe provides no authority to support her claim that the magistrate court could not consider the NCO. Additionally, the magistrate court found that even if the NCO had been quashed immediately, Doe was fundamentally unable to safely parent her children. At the time the children were taken into custody, Doe's own history of trauma and mental health concerns prevented her from providing a stable, secure, and nurturing home for her children. Doe failed to take the recommended steps to address her mental health concerns and her inability to safely parent her children. The magistrate court found that "little to nothing" had changed in Doe's abilities, attitudes, and mental health since the children were taken into care, and it was in the best interests of the children to terminate Doe's parental rights. The magistrate court's findings are supported by substantial and competent evidence. As such, the magistrate court's conclusion that terminating Doe's parental rights is in the best interests of the children is supported by substantial and competent evidence.

## IV.

## CONCLUSION

The magistrate court's finding that Doe neglected her children is supported by substantial and competent evidence, and Doe did not challenge the magistrate court's finding that Doe was unable to discharge her parental responsibilities. The magistrate court's conclusion that terminating Doe's parental rights is in the children's best interests is supported by substantial and

competent evidence.  Accordingly, we affirm the magistrate court's judgment terminating Doe's parental rights.

Judge GRATTON and Judge LORELLO **CONCUR.**