**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 48691**

| | | |
|---|---|---|
| In the Interest of: Jane Doe I, Jane Doe II, and John Doe I, Children Under Eighteen (18) Years of Age. | ) ) ) | |
| STATE OF IDAHO, DEPARTMENT OF HEALTH AND WELFARE | ) ) | Filed: July 8, 2021 |
| Petitioner-Respondent, | ) ) ) | Melanie Gagnepain, Clerk |
| v. | ) ) ) | THIS IS AN UNPUBLISHED OPINION AND SHALL NOT |
| JANE DOE (2021-11), | ) ) | BE CITED AS AUTHORITY |
| Respondent-Appellant. | ) ) ) | |

Appeal from the Magistrate Division of the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Andrew Ellis, Magistrate Judge.

Judgment terminating parental rights, affirmed.

Ellsworth Kallas & Defranco, PLLC; Joseph L. Ellsworth, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Peter A. Mommer, Deputy Attorney General, Boise, for respondent.

_____

HUSKEY, Chief Judge

Jane Doe appeals from the magistrate court's judgment terminating her parental rights. Jane Doe argues that the magistrate court erred by finding that she neglected her children by failing to complete her case plan and finding that it is in the children's best interests to terminate her parental rights. Because the record contains substantial and competent evidence to support the magistrate court's findings that Jane Doe neglected her children and that terminating her parental rights is in the best interests of the children, the magistrate court's judgment terminating Jane Doe's parental rights is affirmed.

1

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

In October 2019, Officer Coils saw a van matching the description of a vehicle associated with a reported burglary in the parking lot of a fast food restaurant. Officer Coils saw John Doe walking from the van to the restaurant and Jane Doe sitting in the front passenger seat. Officer Coils called Detective Canfield, who was investing the burglary, and other law enforcement officers, who responded to the location.

Officer Coils made contact with Jane Doe at the van and saw Jane and John Does' children, S.E., K.E., and J.E. in the back of the van without seatbelts; S.E. was five years old and K.E. and J.E. were four years old. Jane Doe told Officer Coils that the family was on their way to a motel and stopped to get some food. Officer Coils noted that the van was cluttered and Detective Canfield recalled the smell of the van being so overpowering, he "dry heaved."

Officer Coils had Jane Doe and the children exit the van and go inside the restaurant. Officer Coils described the children's behavior inside the restaurant as so chaotic that he had to take a break after thirty minutes.

Detective Canfield interviewed John Doe in the parking lot regarding the burglary investigation. John Doe told Detective Canfield that the family was living in the van, with intermittent, short-term stays in various hotels and he admitted to the theft of the items associated with the burglary investigation. Based on his admission to the theft, John Doe was subsequently arrested and placed in Detective Canfield's patrol car.

A drug detection dog was brought to the scene; the dog sniffed around the exterior of the van, and the dog positively alerted. Law enforcement searched the van and found evidence corroborating John Doe's statement that the family was living in the van. The van contained the children's sheets and bedding, a large gasoline container, bags of clothing, open containers of alcohol, and rotting food. Additionally, law enforcement discovered drug paraphernalia in the van, in Jane Doe's purse, and in a red storage box. Some of the paraphernalia contained residue that tested positive for methamphetamine and some contained residue that tested positive for heroin.

Jane Doe told Officer Coils that she did not use illegal narcotics and was not aware of any drug paraphernalia being present in the van. Officer Coils observed significant bruising on the tops of Jane Doe's hands and in the crease of her elbow, indicative of heroin injection sites.

After speaking with Jane and John Doe, law enforcement arrested Jane Doe for misdemeanor injury to child and John Doe for felony burglary, felony possession of a controlled substance, and misdemeanor injury to child. Jane Doe, John Doe, and the children were transported to the police station, where Jane Doe fell asleep and the children continued to exhibit out-of-control behaviors. The Department of Health and Welfare (Department) was granted temporary custody of the children and they were placed in foster care. At the time, the children were non-verbal, not toilet trained, beyond control behaviorally, and had unaddressed medical and therapeutic needs.

In December 2019, the magistrate court awarded legal custody of the children to the Department and approved case plans for Jane Doe and John Doe. In October 2020, the magistrate court approved the permanency goal of termination of Jane Doe and John Doe's rights to the children. In November 2020, the Department petitioned to terminate Jane Doe's parental rights. Following a trial in February 2021, the magistrate court found by clear and convincing evidence that Jane Doe neglected her children and that termination of Jane Doe's parental rights is in the best interests of the children. Jane Doe timely appeals.[1]

## II.

### STANDARD OF REVIEW

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id.* The Idaho Supreme Court has also said that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *In re Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *In re Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the magistrate court's decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

---

[1]     John Doe's parental rights were also terminated. John Doe filed a separate appeal from the order terminating his parental rights.

## III.

## ANALYSIS

Jane Doe asserts that the magistrate court erred in finding she neglected her children and that termination of her parental rights is in the best interests of the children. The State asserts the court did not err in either determination.

**A. The Magistrate Court's Findings Are Supported by Substantial and Competent Evidence**

Jane Doe challenges the magistrate court's finding that she neglected her children by failing to complete her case plan. The magistrate court's determination that Jane Doe neglected her children by failing to complete her case plan and by failing to provide proper care and control for her children is supported by substantial and competent evidence, as is the court's determination that termination of Jane Doe's parental rights is in the best interests of the children.

**1. The magistrate court did not err when it found Jane Doe neglected her children**

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. I.C. § 16-2001(2). Therefore, the requisites of due process must be met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the grounds for terminating a parent-child relationship be proved by substantial and competent evidence. *Id*. Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by substantial and competent evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *see also* I.C. § 16-2009; *In re Doe*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652.

Idaho Code Section 16-2005 permits a party to petition the court for termination of the parent-child relationship when it is in the child's best interests and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period that will be injurious to the health, morals, or well-being of the child; or

4

(e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

The magistrate court terminated Jane Doe's parental rights on the basis that she neglected her children pursuant to I.C. § 16-2005(1)(b). Idaho Code Section 16-2002(3)(a) defines "neglect" as any conduct included in I.C. § 16-1602(31). Section 16-1602(31)(a) provides, in pertinent part, that a child is neglected when the child is without proper parental care and control, or subsistence, medical, or other care or control necessary for his or her well-being because of the conduct or omission of his or her parents, guardian, or other custodian or their neglect or refusal to provide them. Neglect also exists where the parent has failed to comply with the court's orders or the case plan in a Child Protective Act case and the Department has had temporary or legal custody of the child for fifteen of the most recent twenty-two months and reunification has not been accomplished by the last day of the fifteenth month in which the child has been in the temporary or legal custody of the Department. I.C. § 16-2002(3)(b).

The magistrate court found that Jane Doe neglected her children because she failed to comply with her court-ordered case plan and because she failed to provide proper care and control for her children. Jane Doe challenges the magistrate court's finding that she failed to complete her case plan, arguing that she made progress on several tasks in the case plan. Jane Doe does not challenge the magistrate court's finding that she neglected her children by failing to provide proper care and control beyond stating "the findings and conclusions of the court are disputed." Because Jane Doe fails to provide any argument or authority on this issue, we decline to consider it. *Welfare v. Doe* (2018-24), 164 Idaho 143, 147, 426 P.3d 1243, 1247 (2018). And as a result, the Court affirms the magistrate court's finding that Jane Doe neglected her children by failing to provide proper care and control. *Idaho Dept. of Health and Welfare v. Doe*, 163 Idaho 707, 711, 418 P.3d 1216, 1220 (2016) ("When a judgment is granted on alternative grounds and one of them is not addressed on appeal, we must affirm the judgment."). Even if Jane had preserved a challenge to the finding of neglect, it fails on the merits.

The magistrate court's finding of neglect by failing to provide proper care and control is supported by substantial and competent evidence. At the time the children were placed in the Department's custody, Jane Doe was homeless and living in a filthy van with John Doe and the children. Jane Doe was actively using heroin, methamphetamine, and/or marijuana, and kept drugs and drug paraphernalia in places easily accessible to her children. Jane Doe's untreated substance

abuse impairs her ability to meet her children's basic needs, and she has not demonstrated the ability to maintain sobriety. Similarly, Jane Doe has not demonstrated the ability to obtain employment or secure a safe and stable residence for herself and her children. The magistrate court found that the homelessness and hazardous environment that plagued Jane Doe and her family at the onset of the case remained a real and ongoing possibility at the time of the trial. The court's conclusion that Jane Doe neglected her children by failing to provide proper care and control for her children is supported by substantial and competent evidence, and thus is not erroneous.

Jane Doe challenges the magistrate's court finding on "Count III, Failure to Comply, 15 out of 22 months." Jane Doe asserts there is no legal basis to uphold the magistrate court's finding that Jane Doe failed to comply with her case plan because there is "no twelve month period in this case in which [Jane Doe] failed to comply with the case plan."[2] Jane Doe neither provides citation to authority for her argument nor a more cogent argument. Because of these failings, we decline to address the claim further. *See Doe*, 164 Idaho at 147, 426 P.3d at 1247.

Jane Doe also argues that the magistrate court's finding that Jane Doe neglected her children by failing to comply with her case plan is unsupported by the record. Jane Doe's case plan required her to obtain a substance abuse evaluation and follow the recommendations for treatment, obtain a mental health evaluation and follow all recommendations made by the provider, attend parenting classes, maintain communication with the Department and attend appointments for her children as deemed appropriate by the Department, obtain and maintain a legal source of income, and obtain safe and stable housing for her children. The magistrate court found that Jane Doe failed to comply with her case plan because she did not successfully complete any of the tasks in her case plan

In January 2020, Jane Doe completed a substance abuse assessment and participated in substance abuse treatment from February to June of 2020. In June 2020, Jane Doe stopped

---

[2]     Jane Doe's argument is premised upon a misunderstanding of Idaho Code § 16-2002(3)(b), which states in part: "Neglect also exists where the parent has failed to comply with the court's orders or the case plan in a Child Protective Act case and the Department has had temporary or legal custody of the child for fifteen of the most recent twenty-two months." The fifteen of the most recent twenty-two month requirement is not a consecutive time in which there must be a continuous failure to complete the case plan; rather, it refers to the amount of the time the children must be in the custody of the Department to support a finding of neglect.

6

participating in substance abuse treatment and was discharged from her treatment programs. In December 2020, Jane Doe resumed substance treatment and at the time of the trial, had consistently engaged with treatment. A counselor from one of Jane Doe's treatment facilities initially testified that she reviewed Jane Doe's urinalysis results and they were "all clear." However, on cross-examination, the counselor admitted she had not reviewed all of Jane Doe's urinalysis results from December 2020 to January 2021, some of which were reportedly positive for opiates and methamphetamine. The counselor testified she had only reviewed Jane Doe's urinalysis results for the two weeks prior to the trial. Moreover, Jane Doe is alleged to have committed misdemeanor possession of drug paraphernalia in September 2020 and again in October 2020.

Jane Doe completed a mental health assessment in March 2020. The assessment recommended protective parenting courses, individual counseling, couples counseling with John Doe, completion of substance abuse treatment, and medication management. Jane Doe did not begin individual counseling until December 2020 and never participated in medication management or couples counseling. The Department arranged for family counseling, and the counselor recommended multiple sessions with only John Doe and Jane Doe before including the children. Despite the recommendation from the mental health assessment that Jane Doe participate in couples counseling with John Doe, Jane Doe refused to attend the couples-only sessions. Jane Doe began protective parenting classes in March 2020, but by June 2020, she stopped attending. As a result of her failure to attend, Jane Doe was formally discharged from protective parenting classes in August 2020. Jane Doe took some steps to re-engage with protective parenting classes in December 2020, but did not comply with various requirements necessary to restart the class.

Jane Doe struggled to effectively communicate with the Department. Jane Doe resented that visitation with her children did not increase substantially between February and June 2020. Jane Doe has had inconsistent communication with the Department since June 2020. From July to September 2020, Jane Doe's attendance for visitation was sporadic and she was often late to the visits she did attend. Jane Doe was invited to attend certain appointments for her children, which she attended. When S.E. required emergency dental surgery in October 2019, Jane Doe attended the surgery. She appeared visibly under the influence of opiates, however, and fell asleep in the hospital waiting room.

Jane Doe self-reported that she was employed for some time in 2020 at the Idaho Youth Ranch, but she did not provide income verification. Jane Doe also reported that she was seeking employment at a warehouse in Nampa, but offered no proof of employment at the time of trial.

Between October 2019 and March 2020, Jane Doe lived with her mother and then moved in with a family friend. In March 2020, Jane Doe and John Doe obtained housing in the form of a camp trailer. In June 2020, Jane Doe and John Doe moved from the camp trailer and did not inform the Department of their new residence. Jane Doe's whereabouts from June through December 2020 are unknown. In December 2020, Jane Doe was arrested and briefly incarcerated. Following her release from jail, she and John Doe moved into the home of Jane Doe's mother. Jane Doe did not inform the Department about the move until a court hearing in January 2021. The new residence was temporary and Jane Doe and John Doe did not have a signed lease for the residence. The Department was concerned about the stability of the housing given that Jane Doe previously lived with her mother in October 2019 and chose to leave after a short stay. The Department was also concerned by the ongoing presence of Jane Doe's brother, whose criminal history precluded the Department from approving the residence for the children.

Jane Doe contends she satisfied the visitation condition of her case plan and that any decline in her progress is attributable to the Department. Jane Doe also asserts that the difficulty in arranging increased visitation due to the corona virus pandemic is attributable to the Department and that the inability to increase visitation explains why Jane Doe fell out of compliance with her case plan. Jane Doe alleges that the Department failed to provide meaningful visitation due to the "highly supervised" nature of the visits. However, nothing prevented Jane Doe from continuing the established visitation schedule when the Department was unable to immediately accommodate her request for increased visitation. Instead, Jane Doe's attendance at visits became sporadic and she was often late to visits she attended. The level of supervision for the visits does not excuse Jane Doe's tardiness and missed visits. The visits progressed from being highly supervised with a Department employee maintaining "sight and sound" of the children at all times to less supervised visits that took place in the community. Jane Doe's sporadic visitation and the absence of visitation from June through December 2020 provides substantial and competent evidence that she did not complete this requirement of her case plan. Jane Doe has not established that she could not comply with visitation based on the limited services during the pandemic.

8

Jane Doe further argues that because she made some progress in some of the tasks in her case plan, the record does not support a finding of noncompliance. While Jane Doe is correct that she made progress in certain areas of her case plan, the evidence supports the magistrate court's finding that Jane Doe failed to fully comply with the case plan. The magistrate court recognized that Jane Doe made good progress on her case plan between February and June 2020 and then she chose to disengage in June 2020 and not comply with court orders. The fact that Jane Doe made some progress on various tasks in her case plan does not change that overall, she failed to successfully complete a single assigned task. Thus, the magistrate court's conclusion that Jane Doe failed to comply with the case plan is supported by substantial and competent evidence.

## 2. The magistrate court did not err when it found termination of Jane Doe's parental rights is in the children's best interests

Jane Doe challenges the magistrate court's determination that termination of her parental rights is in the children's best interests, arguing that the court failed to take into account Jane Doe's progress and the fundamental importance of the children's need to maintain a relationship with her.

Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the children to terminate the parent-child relationship. *In re Aragon*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991). When determining whether termination is in the children's best interests, the trial court may consider the parent's history with substance abuse, the stability and permanency of the home, the unemployment of the parent, the financial contribution of the parent to the children's care after the children are placed in protective custody, the improvement of the children while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law. *In re Doe*, 159 Idaho 192, 198, 358 P.3d 77, 83 (2015); *In re Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014). A finding that it is in the best interests of the children to terminate parental rights must still be made upon objective grounds. *In re Doe*, 152 Idaho 953, 956-57, 277 P.3d 400, 403-04 (Ct. App. 2012).

The magistrate court's finding that terminating Jane Doe's parental rights to S.E., K.E., and J.E. is in the best interests of the children is supported by substantial and competent evidence. At the time of the termination trial, the children had been in the Department's care for sixteen months. Prior to the children's removal from Jane Doe's and John Doe's care, the children were homeless, living in a van with Jane Doe and John Doe, and significantly behind in behavioral,

9

emotional, and physical development. In November 2019, S.E. was moved to a potential pre-adoptive home. K.E. and J.E. were moved into the same pre-adoptive home in December 2019.

When S.E. entered the care of the Department, she was five years old, non-verbal, not toilet trained, and often hid from her foster parents. S.E. had about a two-word vocabulary, threw frequent tantrums, lacked personal boundaries, and suffered from intense night terrors. Shortly after being taken into the Department's care, S.E. required emergency oral surgery to remove an abscessed tooth. Since her placement in foster care, S.E. has been toilet trained, acquired table manners, and speaks in full sentences. S.E. has fewer tantrums and her night terrors have subsided. S.E. was diagnosed as being on the Autism Spectrum and will likely need services for the remainder of her childhood, including weekly individual counseling, speech and occupational therapy, and an individual education plan at school.

When K.E. and J.E. were first placed in the care of the Department, they were four years old, were not toilet trained, and exhibited "unruly" behavior. K.E. often spoke on behalf of her siblings while J.E. was largely non-verbal and unintelligible when he attempted to speak. K.E. has since been toilet trained and exhibits appropriate behavior. K.E. was diagnosed with Post Traumatic Stress Disorder and attends trauma and play therapy two times a week. She suffers from night terrors, which increase following visitation with John Doe and Jane Doe. Despite K.E.'s struggles, her foster parents describe her as being extremely bright with a strong memory. J.E. has also been toilet trained and has an increased vocabulary. His speech greatly improved with the help of intensive speech therapy, and he will likely need continued speech therapy in the future. J.E. receives weekly counseling. Although J.E. struggles academically, a diagnosis of Autism Spectrum Disorder has been ruled out. J.E. will likely need continued therapy and counseling for many years.

All three children have thrived in foster care and require stable caregivers who can ensure that the many services and appointments the children require are met. Jane Doe has not shown the ability to meet the needs of her children or provide them with safe and stable housing. She has not adequately addressed her substance abuse addiction and has not pursued treatment for any underlying mental health concerns that may contribute to her addiction. Jane Doe has not demonstrated an ability to maintain employment and remains essentially homeless.

The magistrate court recognized that Jane Doe had made some progress on her case plan, including maintaining sobriety for approximately six months and engaging with the Department.

10

However, the magistrate court correctly noted that following the progress Jane Doe made regarding her sobriety, she relapsed into active substance abuse, dropped out of services, and stopped communicating with the Department. The magistrate court concluded that Jane Doe is easily triggered by frustration, disappointment, and resentment and it is likely she will relapse into substance abuse in the future.

The magistrate court also acknowledged that it would likely be an emotional hardship for the children to lose their legal relationship with Jane Doe. Nonetheless, the magistrate court concluded that the emotional distress the children would suffer from the loss of the legal relationship with their mother was far outweighed by the risk of physical and mental harm posed by returning the children into Jane Doe's care. The magistrate court concluded that if the children were returned to Jane Doe's care, they would again be subjected to hazardous, unstable living situations and be neglected.

The magistrate court's findings are supported by substantial and competent evidence and the magistrate court did not err in so finding.

## IV.

## CONCLUSION

The magistrate court found that Jane Doe neglected her children on alternate bases and Doe does not challenge the alternate basis. Consequently, we affirm the magistrate court's finding that Jane Doe neglected her children by failing to exercise proper parental care and control. The magistrate court's findings that Jane Doe neglected her children by failing to comply with her case plan and that terminating Jane Doe's parental rights is in the children's best interests are supported by substantial and competent evidence. Accordingly, we affirm the magistrate court's judgment terminating Jane Doe's parental rights.

Judge GRATTON and Judge BRAILSFORD **CONCUR**.

11