# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 49379

| | |
|---|---|
| In the Matter of: Jane Doe I, A Child Under Eighteen (18) Years of Age. ) | |
| STATE OF IDAHO, DEPARTMENT OF HEALTH AND WELFARE, ) ) | Filed: May 6, 2022 |
| Petitioner-Respondent, ) | Melanie Gagnepain, Clerk |
| v. ) ) | SUBSTITUTE OPINION THE COURT'S PRIOR |
| JANE DOE (2021-55), ) | OPINION DATED MAY 3, 2022, IS HEREBY WITHDRAWN |
| Respondent-Appellant. ) ) ) ) ) ) | THIS IS AN UNPUBLISHED OPINION AND SHALL NOT BE CITED AS AUTHORITY |

Appeal from the Magistrate Division of the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. James Combo, Magistrate.

Judgment terminating parental rights, <u>affirmed</u>.

Anne Taylor, Chief Kootenai County Public Defender; Patricia L. Taylor, Deputy Public Defender, Coeur d'Alene, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Denise L. Rosen, Deputy Attorney General, Boise, for respondent.

_____

BRAILSFORD, Judge

Jane Doe (Mother) appeals from the magistrate court's judgment terminating her parental rights to her minor child. She argues the court erred by concluding that she neglected the child and that the termination of her parental rights is in the child's best interests. We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Mother gave birth to the child on February 20, 2020, in Coeur d'Alene. At that time, Mother tested positive for amphetamines and THC. The child also tested positive for drugs, and

1

the Department of Health and Welfare took the child into custody. During an adjudicatory hearing, Mother stipulated to jurisdiction, and the magistrate court granted the Department legal custody of the child.

In April 2020, the magistrate court approved a case plan identifying tasks for Mother to complete and reunification as the primary goal. Among numerous other tasks, the plan required Mother to obtain a global assessment of individual needs and follow all treatment recommendations; to submit to random drug testing; to obtain a mental health assessment and address her mental health issues; to establish and maintain a safe, stable home environment; to secure sufficient income to provide for the child's basic needs; to complete a parental fitness evaluation and follow all recommendations; to complete parenting classes; to be proactive in visiting the child; and to comply with the process for the interstate compact on the placement of children (ICPC) because Mother reported she was staying in Washington.

After several review hearings, the Department petitioned to terminate Mother's parental rights in April 2021. Thereafter, Mother gave birth to another child on September 11 in Washington and entered an eighteen-month residential, drug treatment program. The magistrate court held a termination hearing on November 17 at which it heard the testimony of Mother; Elvera Babak, a Department employee; and a child protective services investigator with knowledge about Mother's participation in a drug treatment program in Washington.

The magistrate court entered written findings of fact and conclusions of law in December 2021, granting the Department's petition and terminating Mother's parental rights.[1] The court concluded Mother neglected the child under Idaho Code § 16-2005(1)(b) by failing to provide proper parental care and control necessary for the child's wellbeing, and alternatively, by failing to comply with the case plan. *See* I.C. §§ 16-1602(31)(a) (defining neglect to include child without proper parental care and control); 16-2002(3)(b) (defining neglect to include failure to comply with case plan). Additionally, the court concluded that terminating Mother's parental rights is in the child's best interests.

Mother timely appeals.

---

[1]      The child's paternity was never established.

## II.

## STANDARD OF REVIEW

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. I.C. § 16-2001(2). Therefore, the requisites of due process must be met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the grounds for terminating a parent-child relationship be proved by clear and convincing evidence. *Id*. Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *see also* I.C. § 16-2009; *Doe v. Dep't of Health & Welfare*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652.

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id.* The Idaho Supreme Court has also said that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *State v. Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *Roe v. Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the magistrate court's decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

3

**III.**

**ANALYSIS**

**A.    Failure to Provide Parental Care**

Mother challenges the magistrate court's conclusion that she "is unable to discharge her parental responsibilities" and that "the child lacks parental care necessary for her health, safety, or wellbeing." *See* I.C. § 16-1602(31)(a) (defining neglect to include child without proper parental care and control).  In support of this conclusion, the court found Mother failed to provide financial support for the child, to establish stable housing, to demonstrate safe parenting, and to address her own mental health and substance abuse issues.

Mother does not challenge any of these findings as unsupported by substantial and competent evidence.  Instead, Mother challenges generally the magistrate court's reliance on the testimony of Elvera Babak, the Department employee who testified about Mother's involvement and performance in this case.  Babak also testified about her professional background and employment at the Department.  On this subject, Babak testified on direct examination that she was involved in the case since its inception in February 2020 and that, at that time, she was an intern "assigned on the case with a case manager."  On cross-examination, Babak testified that she obtained her license as a social worker in June 2021 and that she was not "able to complete progress reports" without a license.  When Mother's counsel showed Babak the February and April 2021 progress reports in this case on which her signature appeared, she inconsistently testified that "apparently" she did sign those reports before receiving her license.  On re-direct, however, Babak explained she received her license in June 2020 and did not sign progress reports when she was unlicensed.

Based on this testimony, Mother argues the magistrate court "abused its discretion by allowing [Babak] to testify."  Mother asserts that, because "there was disputed evidence [about] whether [Babak] was properly licensed as a social worker at the time she authored various progress reports," Babak is not a competent witness under Idaho Rule of Evidence 602;[2] she does not have "adequate personal knowledge of [Mother's] progress"; and her "credibility is seriously disputed."

---

[2]    Idaho Rule of Evidence 602 provides, in relevant part, that "A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.  Evidence to prove personal knowledge may consist of the witness's own testimony."

We are not persuaded by Mother's argument that the magistrate court erred by allowing Babak to testify or by considering her testimony. Although the magistrate court did not mention Babak's testimony or credibility in its findings and conclusions, the clear import of her testimony is that she misspoke on direct examination that she received her social worker license in June 2021 and clarified on re-direct that she received the license in June 2020. Whether Babak's corrected testimony on re-direct was credible is exclusively for the magistrate court's determination. Although this Court conducts an independent review of the record for substantial and competent evidence, it "must draw all reasonable inferences in favor of the magistrate court's judgment [because it] has the opportunity to observe the witnesses' demeanor, to assess their credibility, to detect prejudice or motive, and to judge the character of the parties." *Doe v. Doe*, 150 Idaho 46, 49, 244 P.3d 190, 193 (2010) (internal quotation marks omitted).

Further, that Babak was not a licensed social worker during a portion of the case's pendency does not mean she lacked personal knowledge to testify. Whether a witness has personal knowledge turns on whether she has firsthand or other admissible knowledge of the events, not on her qualifications or authorization to perform certain functions on the Department's behalf. Moreover, Mother never objected to Babak's testimony at the termination hearing as lacking personal knowledge.

Mother also argues substantial and competent evidence does not support the magistrate court's finding that Mother did "not understand[] the child's needs during visits." Mother's argument focuses on the timeframe in March 2020 at the beginning of the coronavirus pandemic when the child was approximately one month old. According to Mother, during this time, she "had little control over what occurred with the child"; "the Department did not make any efforts to bond the child with Mother for about one month beginning in March of 2020 due to COVID"; and Mother was "[un]able to connect and bond with the child during March 2020 through the beginning of May 2020."

The record does not support Mother's assertion that the Department made no efforts to maintain contact between her and the child. Although Mother was unable to visit the child for twenty-five days beginning in March 2020 because of the pandemic, the Department emailed Mother "daily updates and pictures" of the child during this time. Additionally, the magistrate court did not fault Mother for not understanding the child's needs during this timeframe. Rather, the court's finding that Mother struggled to meet the child's needs

5

focused on Mother's visitation--not the period during which the pandemic precluded visitation. For example, the court found that "*during visitation* [Mother] struggled to understand [the child's] needs and what was developmentally appropriate for [the child's] age." (Emphasis added.) Substantial and competent evidence supports this finding. For example, the evidence shows that the child would become "dysregulated" and cry during visitation; Mother was unable to sooth the child; and the visits became "harder" as the child got older and would cling to her foster parent.

Finally, Mother's reliance on *Doe*, 137 Idaho 758, 53 P.3d 341, is misplaced. In that case, the child's father was incarcerated at the time of the child's birth and had never met the child. *Id.* at 759, 53 P.3d at 342. The magistrate court concluded the father had abandoned the child and terminated the father's parental rights. *Id.* On appeal, the Idaho Supreme Court reversed this decision, concluding the magistrate court "trivialize[d] Doe's efforts" while he was in prison to have a relationship with the child, which included sending gifts, attempting to contact the child's mother and grandmother, authorizing the child's medical treatment, contacting the caseworker, and writing the magistrate court. *Id.* *Doe* is distinguishable from this case in numerous respects including, for example, that Mother was not incarcerated during this case's pendency and the magistrate court did not conclude she abandoned the child.

We hold that substantial and competent evidence supports the magistrate court's conclusion that Mother neglected the child under I.C. § 16-1602(31)(a) by failing to provide proper parental care for the child's well-being. The court did not error either by allowing Babak to testify or by relying on her testimony. Further, substantial and competent evidence supports the court's conclusion that Mother struggled to meet and understand the child's needs during visitation. Regardless, this finding is only one of numerous other findings supporting the court's conclusion of neglect, and Mother does not challenge any of those other findings.

B.    **Failure to Comply With Case Plan**

Mother challenges the magistrate court's alternative conclusion that Mother neglected the child by failing to comply with the case plan. *See* I.C. § 16-2002(3)(b) (defining neglect to include failure to comply with case plan). In support, Mother argues that "significant

6

evidence was adduced at the termination trial to prove Mother complied with the [case plan]"; Mother "substantially complet[ed]" her case plan; and "[w]hile not perfect in the execution, Mother tried to the best of her capabilities to comply with the [case plan]" given the pandemic "restrictions." In support, Mother relies on and cites to her own testimony at the termination hearing.

Mother's testimony, however, shows she failed to comply with the case plan. As Mother acknowledges on appeal, "she did not have stable housing from 2013 through 2021"; "she was discharged from [drug treatment] in August 2020 for lack of engagement"; although she reengaged in treatment, "she stopped attending treatment in June 2021"; and "she did not have proof that she completed the program." Further, Mother "admitted to being discharged from her required [mental health] counseling for lack of engagement in December of 2020." In addition to these acknowledged failures, substantial and competent evidence shows Mother failed to complete her case plan. For example, Mother did not obtain employment, establish stable housing, submit to random drug testing, address her drug abuse and mental health issues, or comply with the ICPC process. Indeed, during the termination hearing Mother admitted she failed to comply with her case plan: "Q. You have not substantially complied with your case plan until your recent entry into [drug treatment in September 2021]; correct? A. Yes."

Mother's argument that she "was extremely restricted in her ability to engage in the [case plan] because of the global pandemic" is unpersuasive. While the pandemic undoubtedly changed the manner in which a parent had to perform a case plan, Mother fails to articulate how the pandemic adversely affected her ability to perform her case plan, except for a period of twenty-five days in March 2020 when she did not have visitation. This brief suspension in visitation, however, does not explain Mother's failures to perform numerous other case plan tasks during the case's pendency. Based on a review of the record, we hold that substantial and competent evidence supports the magistrate court's finding that Mother did not comply with the case plan.

## C.    Child's Best Interests

Mother also challenges the magistrate court's conclusion that terminating her parental rights is in the child's best interests. Once a statutory ground for termination has been

established, the trial court must next determine whether it is in the best interests of the child to terminate the parent-child relationship. *Tanner v. State, Dep't of Health & Welfare*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991). When determining whether termination is in the child's best interests, the trial court may consider the parent's history with substance abuse, the stability and permanency of the home, the unemployment of the parent, the financial contribution of the parent to the child's care after the child is placed in protective custody, the improvement of the child while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law. *Doe (2015-03) v. Doe*, 159 Idaho 192, 198, 358 P.3d 77, 83 (2015); *Idaho Dep't of Health & Welfare v. Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014). A finding that it is in the best interests of the child to terminate parental rights must still be made upon objective grounds. *Idaho Dep't of Health & Welfare v. Doe*, 152 Idaho 953, 956-57, 277 P.3d 400, 403-04 (Ct. App. 2012).

In support of Mother's challenge to the magistrate court's conclusion that terminating her parental rights is in the child's best interests, Mother lists the factors for consideration identified in *Doe (2015-03)* set forth above, and she argues "a review of [these] factors weigh [sic] heavily in favor of Mother because she made significant efforts and progress with her [case plan]." The record, however, belies Mother's assertion that she made "significant efforts and progress" under the case plan, as discussed above. Additionally, this cursory argument is inadequate to preserve the issue for appeal. *See, e.g., Idaho Dep't of Health & Welfare v. Doe (2018-24)*, 164 Idaho 143, 147, 426 P.3d 1243, 1247 (2018) (noting appellate court generally does not address issues not supported by cogent argument).

Mother also argues "the evidence at trial was colored to appear as though the child made improvement while in foster care, but there was a lack of evidence to establish a baseline of the child's development before entry into foster care." Rather than focusing on the child's improvement in foster care, however, the magistrate court found that the child has "permanency and stability," is "well-adjusted," and "is thriving" in foster care. The court did not compare the child's improvement to a "baseline . . . before entry into foster care" because the Department placed the child into foster care at birth after she tested positive for drugs. Accordingly, no "baseline" of the child's development existed when she entered foster care, and the court's findings focusing on the child's development during foster care were appropriate.

8

Finally, Mother's reliance on *Stockwell v. Stockwell*, 116 Idaho 297, 775 P.2d 611 (1989), is not persuasive. In that case, the Idaho Supreme Court addressed a custody dispute between a mother and stepfather. *Id.* It ruled that in custody disputes between a natural parent and a nonparent, a presumption applies that the natural parent should have custody and that this presumption precludes consideration of the child's best interests, absent certain circumstances, which includes instances where the natural parent is unfit. *Id.* at 613. Because we affirm the magistrate court's conclusion that Mother is unfit, the presumption does not apply.

## IV.

## CONCLUSION

Substantial and competent evidence supports the magistrate court's conclusion that Mother neglected the child and that terminating Mother's parental rights is in the child's best interests. Accordingly, we affirm the judgment terminating Mother's parental rights.

Chief Judge LORELLO and Judge GRATTON **CONCUR**.